**Robin DWYER, Petitioner,**

v.

**UNITED STATES, Respondent.**

**Misc. No. 89–0150.**

United States District Court,
S.D. California.

July 27, 1989.

George Weingarten, San Diego, Cal., for petitioner.

John A. Houston, Asst. U.S. Atty., San Diego, Cal., for respondent.

## MEMORANDUM DECISION AND ORDER

### (Amended)

GORDON THOMPSON, Jr., Chief Judge.

Petitioner's motion for return of property came on for hearing before the Honorable Gordon Thompson, Jr. on June 26, 1989. George Weingarten appeared on behalf of the petitioner. Assistant United States Attorney John A. Houston appeared on behalf of the respondent. Having reviewed the pleadings, exhibits, and arguments in favor and in opposition to the motion, the Court rules as follows.

### BACKGROUND

On February 21, 1989, the Drug Enforcement Administration ("DEA") seized petitioner Robin Dwyer's 1985 Mercedes Benz. The DEA seized the vehicle in connection with "Operation Crankcase," a massive methamphetamine sting conducted through Triple Neck Supply Company, a retailer of chemicals. Ronald Martenson, Ms. Dwyer's boyfriend, was a target of the sting. He allegedly drove Ms. Dwyer's Mercedes to Triple Neck Supply on at least one occasion, and used the vehicle to transport the chemicals he purchased for the purpose of manufacturing methamphetamine.

The DEA seized the vehicle under 21 U.S.C. section 881(a) because there was reason to believe that it was used to transport chemicals for the purpose of manufacturing a controlled substance. The DEA did not send Ms. Dwyer a seizure notice, however, until April 24, 1989—62 days after the seizure. Ms. Dwyer claims that the seizure was improper and requests that the property be returned.

### DISCUSSION

A. *Probable Cause for the Seizure*

█ Petitioner argues that her vehicle should be returned because no seizure warrant was issued and the DEA lacked probable cause for making the seizure. Pursuant to 21 U.S.C. section 881(b)(4), the

government may seize a conveyance without a seizure warrant where there is "probable cause to believe that the property is subject to civil forfeiture under this subchapter." A vehicle used to transport raw materials intended for use in manufacturing a controlled substance is forfeitable under 21 U.S.C. section 881(a). *See* 21 U.S.C. §§ 881(a)(2), 881(a)(4).

It is apparent that the DEA properly seized Ms. Dwyer's vehicle under 21 U.S.C. § 881(a) because the DEA agents had probable cause to believe that it was used to transport chemicals for the purpose of manufacturing methamphetamine. The agents observed Ronald Martenson, Ms. Dwyer's boyfriend, using the vehicle on at least one occasion to transport chemicals which he purchased at Triple Neck Supply Company. The government also submitted a letter from Ms. Dwyer to her boyfriend which DEA agents seized when they searched Ms. Dwyer's house. The letter includes the question, "What good is a man that keeps drugs away from his son, but makes it for someone eles[?] [sic]" Based on this language, the government could argue that Ms. Dwyer not only knew that Mr. Martenson was involved in manufacturing methamphetamine, but also knew or should have known that he would use her vehicle in connection with his illegal activities. The agents' observation of the vehicle at Triple Neck Supply along with the letter in Ms. Dwyer's home provided sufficient grounds for making the seizure.

### B. *Failure to Expedite the Forfeiture*

Notwithstanding the DEA's probable cause for making the seizure, it is the judgment of this Court that Ms. Dwyer's vehicle should be returned due to the government's failure to expedite the forfeiture proceedings. Congress has always required forfeiture proceedings under 21 U.S.C. section 881 to be instituted "promptly." *See* 21 U.S.C. § 881(b). This requirement appeared in the original legislation which was codified at section 881. *See* Controlled Substances Act, Pub.L. No. 91–513, Title II, § 511. Nevertheless, vehicle owners have routinely faced the problem of being deprived of their vehicles for long periods of time without having any recourse to the courts. To address this problem, Congress recently added new provisions to the statute designed to expedite forfeiture proceedings.

Section 6080 of the Anti–Drug Abuse Act of 1988 is entitled "Expedited Procedures For Seized Conveyances." *See* Pub.L. 100–690, Title VI, Subtitle B, § 6080, 102 Stat. 4181, 4326. It amends the Controlled Substances Act in two significant respects. First, and most relevant here, it creates new section 511A(b) which provides, "At *the earliest practicable opportunity* after determining ownership of the seized conveyance, the head of the department or agency that seizes the conveyance shall furnish a written notice to the owner and other interested parties (including lienholders) of the legal and factual basis of the seizure." (Emphasis added) (codified at 21 U.S.C. § 881–1(b)). Second, it requires that the government file its forfeiture complaint within 60 days after a claimant has filed his claim and cost bond. If the government does not file its complaint in a timely fashion, the conveyance must be returned to the owner. *See* 21 U.S.C. § 881–1(c).

In addition, section 6079 of the Anti–Drug Abuse Act requires the Attorney General and the Secretary of the Treasury to prescribe regulations for expedited administrative proceedings relating to forfeitures. Among other things, the regulations must "provide for a final administrative determination of the case within 21 days of seizure, or provide a procedure by which the defendant can obtain release of the property pending a final determination of the case." *See* Pub.L. No. 100–690, Title VI, Subtitle B, § 6079, 102 Stat. at 4325.

Through these amendments to the Controlled Substances Act, Congress has expressed a clear intent that the government move expeditiously in bringing forfeiture proceedings. The penalty for failing to do so consists of returning the seized conveyance either permanently or until a final determination of the case is made. In light of Congress's intent, this Court finds that it is within its discretion to permanently return a claimant's vehicle where an

agency has failed to send a seizure notice "at the earliest practicable opportunity after determining ownership" as required by 21 U.S.C. section 881–1(c).

■ In the instant case, the DEA failed to send Ms. Dwyer a seizure notice at the earliest practicable opportunity after determining ownership. The DEA held Ms. Dwyer's vehicle for 62 days before sending her the seizure notice. A delay this long defeats the requirement of 21 U.S.C. section 881–1(c) that the government file a forfeiture complaint within 60 days after a claim and cost bond is filed. A claimant cannot file a claim and cost bond until he receives the seizure notice because the notice sets forth the amount that must be posted and the case number in the administrative agency's records. As long as the claim and cost bond are not filed, the 60–day limit for filing the forfeiture complaint does not begin. Therefore, by delaying the notice to the claimant, the government can delay the forfeiture proceedings indefinitely.

To prevent the government from doing indirectly that which it cannot do directly, it would seem that, at the minimum, the government must be required to send the seizure notice within 60 days of the seizure. The new statutory language indicates that Congress intended the delay to be much less than sixty days, however. Title 21, U.S.C. section 881–1(b) provides that the seizing agency must provide written notice to the owner and other interested parties "at the earliest practicable opportunity after determining ownership of the seized conveyance." In the Court's judgment, this language cannot realistically contemplate a delay of longer than a week after ownership is determined.

The government accounts for the 62–day delay in the instant case as follows: From February 21 to February 28, 1989 the DEA Seizure Officer ran a check on the vehicle to determine the owner and lienholders, and wrote a report concerning seizure of the vehicle. Then from March 1 to March 22, 1989 the DEA clerk in charge of forfeitures "processed the vehicle in preparation for storage with the U.S. Marshals service." This apparently involved "verifying the identifying paperwork for accuracy, re-moving and logging in any personal property found within the vehicle, and inspecting the vehicle for damage." During this time period, the office processed over 42 vehicles. Finally, from March 23 to April 24, 1989 the Office of Chief Counsel in the Asset Forfeiture Section of the DEA in Washington, D.C. reviewed the forfeiture report on Ms. Dwyer's vehicle. Upon deciding to pursue forfeiture of the vehicle, the office sent Ms. Dwyer her seizure notice on April 24. The Chief Counsel notes that his office has a staff of only 9 attorneys and 34 support staff, and they received 1,795 forfeiture reports during this time.

This chronology of events demonstrates that the 62–day delay was unreasonable in this case. The statute requires mailing of the seizure notice "at the earliest practicable opportunity after determining ownership of the seized conveyance." Agent Lapuz's declaration reveals that he had identified the owner of the vehicle by February 28, seven days after the seizure. At that point, there is really no reason why the seizure notice could not have been sent almost immediately. It took the DEA another 55 days to send her the notice, however. It is no excuse that the agency has chosen a set of procedures which requires further processing of the records in a central location with too few personnel to do so expeditiously. Congress has mandated that the seizure notice be sent at the earliest practicable opportunity. The DEA must adopt more streamlined procedures or assign more personnel to processing forfeitures so as to comply with the Congressional mandate.

The government argues that the 62–day period between the seizure and written notice was not unreasonable. It cites to the case of *United States v. $8,850*, 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983), in which the Supreme Court ruled that an 18–month delay between seizure and the filing of a complaint was not a violation of due process. The *United States v. $8,850* case simply does not apply to the situation before us, however. The issue before the Court is one of statutory construction—not due process. Congress is free to draw requirements which are more demanding

than the minimum requirements of due process as set forth in *United States v. $8,850.* In that regard, it is worth noting that if the new statutory provisions had been effective at the time, the 18–month delay in *United States v. $8,850* would have run afoul of the 60–day requirement in 21 U.S.C. § 881–1(c).

■ Finally, the government's contention that section 881–1 is not yet effective is completely meritless. The source of section 881–1 (i.e., Title VI, Subtitle B, section 6080 of the Anti–Drug Abuse Act) contains no separate provision governing its effective date. Where no effective date is specified, a law becomes effective on the date of its enactment. In the instant case, Congress enacted the Anti–Drug Abuse Act on November 18, 1988. Therefore, 21 U.S.C. section 881–1 was effective at the time the DEA seized Ms. Dwyer's vehicle.

## CONCLUSION

The petitioner's vehicle shall be returned and forfeiture shall not take place. In addition, the bond petitioner posted with her claim shall be exonerated in full.

IT IS SO ORDERED.