724 F.Supp. 767 (1989)
Emmanuel BRANTZ, M.D., Petitioner,
v.
UNITED STATES, Respondent.
Misc. No. 89-0546-GT.
United States District Court, S.D. California.
November 8, 1989.
*768 Patrick Q. Hall, San Diego, Cal., for petitioner.
John Houston, Asst. U.S. Atty., San Diego, Cal., for respondent.

MEMORANDUM DECISION AND ORDER
GORDON THOMPSON, Jr., Chief Judge.
Petitioner's motion for return of seized property came on for hearing before the Honorable Gordon Thompson, Jr. on October 23, 1989. Patrick Q. Hall, Esq., appeared on behalf of the petitioner. Assistant United States Attorney John Houston appeared on behalf of the respondent. Having reviewed the pleadings, exhibits, declarations, and arguments in favor and in opposition to the motion, the court rules as follows.

BACKGROUND
This matter involves the Drug Enforcement Administration's ("DEA") seizure of a 1984 Mercedes Benz from petitioner Emmanuel Brantz, M.D. On August 17, 1989, agents from the State of California Bureau of Narcotic Enforcement and the DEA executed a state search warrant at Dr. Brantz's office and seized the vehicle. The DEA sent Dr. Brantz a seizure notice on September 7, 1989, three weeks after the seizure took place. The government alleges that Dr. Brantz used his medical practice to illegally traffic in amphetamines. He has been charged in state court with 14 felony counts involving dispensing controlled substances without a legitimate medical purpose.
The government claims it seized the vehicle because it was purchased with the proceeds of illegal narcotics sales and it was used to facilitate the illegal possession of a controlled substance. See 21 U.S.C. §§ 881(a)(6), 881(a)(4). Dr. Brantz seeks the return of his vehicle under Federal Rule of Criminal Procedure 41(e) on the ground that the government failed to serve the seizure notice in a sufficiently expeditious manner. In addition, Dr. Brantz has requested an evidentiary hearing on the issue of whether the DEA had probable cause to seize his vehicle.

DISCUSSION
This case involves the procedures which must be followed when a conveyance is *769 seized for forfeiture in connection with a drug-related offense. Under the forfeiture law, the government may forfeit a vehicle which is traceable to the proceeds of illegal narcotics transactions or used to facilitate the transportation of illegal narcotics. See 21 U.S.C. § 881(a). The procedures the government must follow to effect such forfeitures are generally the same as those used for the forfeiture of property seized under the customs laws. See 21 U.S.C. § 881(d). The seizing agency must publish notice of the seizure and its intent to forfeit the property for at least three successive weeks. See 19 U.S.C. § 1607(a). In addition, written notice of the seizure together with information on the applicable procedures must be sent to those who appear to have an interest in the seized property. Id. The customs forfeiture statute sets forth no time limit within which the agency must effect the written and published notices.
Any person claiming the property may file a claim and post a bond for the property within 20 days from the date of the first publication, from which the government's costs are deducted if the property is ultimately forfeited. See 19 U.S.C. § 1608. The filing of a claim and cost bond requires the government to initiate a judicial forfeiture proceeding by filing a civil complaint in federal court. Id. If the claimant fails to file a timely claim and cost bond, however, the agency will declare the property forfeited and dispose of it accordingly. See 19 U.S.C. § 1609.
Despite these procedures, claimants have routinely been deprived of their property for long periods of time without having any recourse to the courts. See, e.g., United States v. $8,850, 461 U.S. 555, 569-70, 103 S.Ct. 2005, 2014-15, 76 L.Ed.2d 143 (1983) (an 18-month delay in instituting civil forfeiture proceedings is not a violation of due process). To address the problem of excessive delay on the part of governmental agencies, Congress recently enacted a set of expedited procedures for conveyances seized for drug-related offenses. Among these expedited procedures is a requirement that the seizing agency furnish written notice of the legal and factual basis of the seizure to the owner and other interested parties "at the earliest practicable opportunity after determining ownership of the seized conveyance." 21 U.S.C. § 881-1(b). In addition, the government must file a forfeiture complaint within 60 days of the time a claim and cost bond is filed. 21 U.S.C. § 881-1(c). If the government fails to do so, the property must be returned to the owner. Id.
In Dwyer v. United States, 716 F.Supp. 1337, 1340 (S.D.Cal.1989), this court held that a delay of 62 days before mailing a seizure notice violated the requirement that a seizure notice must be sent to the owner at the earliest practicable opportunity after determining ownership. The indeterminate nature of the language "at the earliest practicable opportunity" demonstrates that Congress did not intend a bright-line standard in this area. Nonetheless, the court concluded that this language cannot contemplate a delay of over 60 days due to the requirement that the government must file its complaint within 60 days after the claimant has filed his claim and cost bond. See Dwyer, 716 F.Supp. at 1340 ("To prevent the government from doing indirectly that which it cannot do directly, it would seem that, at the minimum, the government must be required to send the seizure notice within 60 days of the seizure"); see also 21 U.S.C. § 881-1(c). The court ordered the government to return the vehicle, and ruled that further forfeiture proceedings could not take place.
The instant case raises the issue of whether a 21-day delay before sending a seizure notice warrants the return of a vehicle under 21 U.S.C. § 881-1(b). In the Dwyer case, the court noted in dicta that the language of section 881-1(b) indicates that Congress intended the delay to be much less than 60 days. The court stated that the phrase "at the earliest practicable opportunity" "cannot realistically contemplate a delay of longer than a week after ownership is determined." (Emphasis added) Dwyer, 716 F.Supp. at 1340. This interpretation was not necessary for the Dwyer holding, however, and it is not binding precedent here.
*770 In this case, the delay is longer than a week, yet less than 60 days. The government claims that sending a seizure notice 21 days after the seizure was "at the earliest practicable opportunity" because the DEA apparently had to do a number of things before sending out the notice  namely, the matter had to be referred to Washington, D.C., where a forfeiture case file had to be opened; lienholders had to be determined; arrangements had to be made for publication in a nationally circulating newspaper; and the DEA asset forfeiture division had to review the facts to make a determination whether there was probable cause to institute forfeiture proceedings.
Section 881-1(b) does not require the DEA to take these time consuming steps, however. All the statute requires is that "at the earliest practicable opportunity after determining ownership of the seized conveyance, the head of the department or agency that seizes the conveyance shall furnish a written notice to the owner and other interested parties (including lienholders) of the legal and factual basis of the seizure." (Emphasis added) 21 U.S.C. § 881-1(b). In other words, all section 881-1(b) provides is that the agency must inform the owner of two things: that it has seized the vehicle, and why it has seized the vehicle. In most cases, this should not take several weeks to do.
It is true that under the procedures set forth in the customs laws, the seizing agency must evaluate the case and determine whether it should pursue a forefeiture before giving notice of the seizure. The written notice pursuant to the customs laws at 19 U.S.C. § 1607 and the notice contemplated by 21 U.S.C. § 881-1(b) are not necessarily the same thing, however. They could be two distinct documents, both of which are sent to the owner of a seized vehicle. Understandably, it may take a few weeks for the seizing agency to review the facts of a particular case to determine whether it is appropriate to forfeit the subject property and send out a notice under 19 U.S.C. § 1607, informing the owner of the agency's intent to forfeit the property and the steps which interested parties must take to bring about a judicial forfeiture proceeding at which the forfeiture can be challenged.
By contrast, the notice contemplated by 21 U.S.C. § 881-1(b) merely notifies the owner that the vehicle has been seized and the legal and factual basis for the seizure. It simply apprises the owner of the agency which has the vehicle and why it has the vehicle. Unlike the notice under 19 U.S.C. § 1607, it does not set in motion the process of instituting judicial forfeiture proceedings. Since the agency does not have to make its decision whether to forfeit the conveyance before issuing the section 881-1(b) notice, it can be sent to interested parties much more expeditiously than the notice sent pursuant to 19 U.S.C. § 1607.
Obviously, it may take some time to fully evaluate a case and to decide whether or not to pursue a forfeiture action against the conveyance. If the seizing agency waits to make such a determination before sending a written notice to interested parties, however, the vehicle owner may go for months without knowing who has the vehicle or why. Owners are often given the proverbial run around city hall when they attempt to find out who has custody of the vehicle. As this court has stated elsewhere, "The deprivation of one's personal transportation is a substantial hardship in a metropolitan area the size of San Diego, where the need to traverse great distances quickly and efficiently often makes public transportation an unrealistic, time-consuming alternative." Garcia-Rubio v. Immigration and Naturalization Service, 703 F.Supp. 859, 862 (S.D.Ca.1989).
The expedited procedures under 21 U.S.C. § 881-1 are an attempt to prevent individuals from being deprived of their conveyances for an undue amount of time before the government has made any showing that it is entitled to the property under the forfeiture laws. Not only must the seizing agency send written notice of the legal and factual basis of the seizure at the earliest practicable opportunity, but the owner may also petition the agency for an expedited decision whether it will seek to forfeit the vehicle. See 21 U.S.C. § 881-1(a). If the agency does not act on *771 the petition within 20 days, the conveyance must be returned pending further forfeiture proceedings. Id. Furthermore, the government must file a forfeiture complaint in district court no later than 60 days after the owner has filed a claim and cost bond. See 21 U.S.C. § 881-1(c). If the government fails to do so, the court must order the property returned and forfeiture may not take place. Id. Finally, the owner may obtain release of the conveyance by posting a bond in an amount equal to the value of the conveyance. See 21 U.S.C. § 881-1(d). Of course, the owner has no way of availing himself of these procedures unless he has first received notice of the seizure under 21 U.S.C. § 881-1(b).
Whether the seizure notice under section 881-1(b) was sent at the earliest practicable opportunity after determining ownership must be evaluated on a case by case basis. It is conceivable that there may be complex cases where the agency with all due diligence cannot compile all the information concerning the legal and factual basis of the seizure for a few weeks after determining ownership of the vehicle. This was not the situation in the instant case, however. Prior to the seizure, the agencies involved had conducted a thorough investigation of Dr. Brantz's medical practice, which they allegedly determined was being used to illegally traffic in amphetamines. They had further determined that Dr. Brantz purchased the vehicle in question from his business account and that there were no lienholders. Thus, the DEA had already determined ownership and knew the legal and factual basis for the seizure on August 17, 1989, when it seized the vehicle. Under the circumstances of this case, there is no reason the DEA could not have sent out a simple notice within one week, formally notifying Dr. Brantz that it had possession of the vehicle and its reasons for the seizure.
The government argues that Congress provided the Attorney General, rather than the courts, with the discretion to determine the meaning of the phrase "at the earliest practicable opportunity" by means of 21 U.S.C. § 881-1(a)(4). Section 881-1(a) provides a means for vehicle owners who have filed their claim and cost bond in the manner provided under the customs laws to petition the Attorney General for an expedited decision as to whether he will pursue the forfeiture. If the Attorney General does not grant or deny the petition within 20 days, the conveyance must be returned pending further forfeiture proceedings. Subsection 881-1(a) (4) provides "The Attorney General shall prescribe regulations to carry out this section." (Emphasis added).
The government contends that the use of the word "this section" means that Congress intended subsection 881-1(a)(4) to apply to all the provisions of 21 U.S.C. § 881-1. It is clear from its context, however, that the section to which this provision refers is section 881-1(a). The term "this section" is used repeatedly within section 881-1(a) to refer to the process of petitioning the Attorney General for an expedited decision. For example, the statute states, "The Attorney General shall make a determination on a petition under this section expeditiously." (Emphasis added) 21 U.S.C. § 881-1(a)(1). In addition, it states, "If the Attorney General does not grant or deny a petition under this section within 20 days after the date on which the petition is filed, the conveyance shall be returned to the owner." (Emphasis added) Id. Obviously, these references have nothing to do with sending a seizure notice under section 881-1(b).
Furthermore, even if subsection 881-1(a)(4) were to apply to the entirety of section 881-1, the Attorney General would not be empowered to determine the meaning of the language "at the earliest practicable opportunity." The congressional mandate to "prescribe regulations to carry out this section" is not a delegation of authority to interpret the statute. See 21 U.S.C. § 881-1(a)(4). It is the province of the courts to interpret statutes enacted by Congress, unless Congress clearly declares otherwise. If Congress had intended to vest the Attorney General with the power to determine the meaning of the language of section 881-1(b), it would have *772 done so more directly than ordering that he establish regulations to "carry out" the section.
The government also argues that section 881-1(b) does not apply to seizures made before October 11, 1989, because the Attorney General's regulations regarding expedited forfeitures were not effective until that date. Nowhere in section 881-1, or elsewhere for that matter, does Congress excuse the government from complying with the notice requirement under section 881-1(b) until the effective date of the Attorney General's regulations. The effective date relevant to section 881-1(b) is November 18, 1988, the date of enactment of the Anti-Drug Abuse Act of 1988. See Pub.L. 100-690, Title VI, Subtitle B, § 6080, 102 Stat. 4181, 4326.
Finally, the government contests the use of Federal Rule of Criminal Procedure 41(e) as a mechanism for seeking the return of property which has been seized pending a civil forfeiture proceeding. Rule 41(e) provides that a person aggrieved by an unlawful search and seizure may move for return of the property. If the Rule 41(e) motion is granted, the property will be inadmissible as evidence in any hearing or trial. See Fed.R.Crim.P. 41(e). The government is correct in its assertion that Rule 41(e) is not the appropriate procedural mechanism for a motion for return of property subject to forfeiture because the proceeding is not part of a criminal case. A motion for return of property seized for forfeiture purposes is essentially a civil action to recover personal property. Cf. Goodman v. United States, 369 F.2d 166, 168 (9th Cir.1966) (where an individual seeks return of records seized in an Internal Revenue Service investigation, "[c]ommon sense tells us that this is not merely another step in a criminal case for the simple reason that there is, and has been, no criminal case pending in any stage"). In addition, the use of Rule 41(e) is especially dubious in a case such as this one, where the claimant has not challenged the legality of the seizure, but rather the government's failure to follow the applicable procedures after seizing the property.
Where the government has failed to comply with the procedures set forth in the statutes governing civil forfeitures, however, aggreived claimants must have a remedy available to them prior to the filing of a civil forfeiture proceeding. Numerous courts have treated motions for return of property as civil equitable proceedings, even though styled as being pursuant to Rule 41(e). See, e.g., United States v. Martinson, 809 F.2d 1364, 1366-68 (9th Cir.1987) (jurisdiction exists to grant equitable relief notwithstanding the fact that the claimant files under Rule 41(e)); Hunsucker v. Phinney, 497 F.2d 29, 34 (5th Cir.1974), cert. denied, 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975) (motions for return of seized property are governed by equitable principles, whether viewed as based on Rule 41(e) or on the general equitable jurisdiction of the federal courts); Weldon v. United States, 196 F.2d 874, 875 (9th Cir.1952) (Rule 41 motions filed before pendency of criminal case are essentially civil actions to recover personal property); cf. United States v. $83,310.78, 851 F.2d 1231, 1235 (9th Cir.1988) (district court may refrain from treating a Rule 41(e) motion as a civil equitable proceeding where a forfeiture complaint has been filed, because the claimant has adequate alternative remedies within the pending civil forfeiture case).
Accordingly, this court will entertain motions for return of property seized for forfeiture purposes under its general equity jurisdiction, even though they are brought as Rule 41(e) motions. By doing so, however, the court does not approve of the standard practice of filing such motions under the guise of Rule 41(e). That the courts have been willing to entertain motions for return of property under their equity jurisdiction has not somehow transformed Rule 41(e) into a civil rule. Rather than bringing his motion under Rule 41(e), Dr. Brantz should have filed a miscellaneous case invoking the court's general equity jurisdiction. In this case, as in most cases, however, the invocation of the court's general equity jurisdiction rather than Rule 41(e) is really a matter of semantics. *773 The substance of these motions generally will be no different whether styled as a "Rule 41(e) Motion for Return of Property" or simply as a "Motion for Return of Seized Property." Therefore, the court will not dismiss Dr. Brantz's motion merely by virtue of its incorrect invocation of Rule 41(e).
Nevertheless, the court declines to receive evidence regarding the DEA's alleged lack of probable cause to seize Dr. Brantz's vehicle. Rule 41(e) provides that the court "shall receive evidence" on any issue of fact necessary to determine the legality of the seizure. The court is not bound by this requirement in an equitable proceeding for return of property seized for forfeiture purposes, however. Since the government has the burden of showing probable cause in order to prevail in the judicial forfeiture proceeding, a pre-complaint evidentiary hearing is an unnecessary and time-consuming exercise. See 19 U.S.C. § 1615. The claimant's proper remedy is to bring a summary judgment motion on the issue of probable cause once the complaint is filed. The expedited procedures for seized conveyances mitigate any prejudice which the claimant may suffer as a result of his inability to raise the probable cause issue until a civil forfeiture case is pending. For example, the claimant may petition for an expedited decision pursuant to 21 U.S.C. § 881-1(a), or obtain immediate release of the conveyance by providing security pursuant to 21 U.S.C. § 881-1(d). Therefore, the court will not entertain an evidentiary hearing as to probable cause for the seizure in this case.
Having determined that the DEA failed to send a written notice setting forth the legal and factual basis of the seizure at the earliest practicable opportunity after determining ownership, the court must craft an equitable remedy. In Dwyer v. United States, 716 F.Supp. at 1341, this court ordered the government to return the petitioner's vehicle, and ruled that forfeiture proceedings could not take place due to the government's failure to send a notice at the earliest practicable opportunity. In Dwyer, however, the seizing agency failed to send a written notice for over 60 days after the seizure took place. Id. at 1340. Since the agency should not be able to circumvent the section 881-1(c) requirement that a forfeiture complaint must be filed within 60 days of the claim and cost bond by delaying the initial seizure notice beyond 60 days, the court applied the section 881-1(c) remedy of returning the conveyance and forbidding forfeiture. Id.
Such a remedy is not necessary in the instant case. Here, the DEA sent written notice 21 days after the seizure when it should have done so earlier. As a result, Dr. Brantz was wrongfully deprived of an opportunity to obtain an early release of his vehicle by posting a bond pursuant to 21 U.S.C. § 881-1(d). The court notes that Dr. Brantz's vehicle is eligible for release under section 881-1(d) since it has not been seized as contraband or evidence of a violation of law, nor is it particularly suited for use in illegal activities. See 21 U.S.C. § 881-1(d). Accordingly, the appropriate remedy in this case is to permit Dr. Brantz to obtain release of his vehicle, provided that he posts a bond in an amount equal to the vehicle's value as security in the event that the vehicle is ultimately forfeited.

CONCLUSION
The petitioner's motion for return of property is granted, and his request for an evidentiary hearing as to probable cause is denied. The government shall return the vehicle to the petitioner immediately upon the posting of a bond in an amount equal to the vehicle's value. The government is not barred from seeking forfeiture of the petitioner's vehicle, however.
IT IS SO ORDERED.