**Philip W. SCOTT, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civil Action No. 96–00647.**

United States District Court, District of Columbia.

Dec. 19, 1996.

may not be cited or relied upon as precedent.

Philip Walter Scott, Marianna Federal Correctional Institution, Marianna, FL, pro se.

Kathryn Good, U.S. Attorney's Office, Judiciary Center Building, Washington, DC, for defendant.

## *MEMORANDUM OPINION*

SPORKIN, District Judge.

Plaintiff, a prisoner who is proceeding *pro se,* seeks the return of certain property seized by the Drug Enforcement Agency upon his arrest on November 29, 1993 and administratively forfeited pursuant to 21 U.S.C. §§ 881(a)(4) and 881(a)(6).[1] He alleges that: (1) his Fifth Amendment due process rights were violated when the DEA failed to provide sufficient and timely notice of civil forfeiture proceedings related to the seizure of a 1987 Chevrolet Sprint and $9,870 in U.S. currency; and (2) the government failed to comply with 21 U.S.C. § 888, which provides for expedited procedures for seized conveyances. Plaintiff also claims that his Fourth Amendment rights were violated because the search warrant pursuant to which the property was seized was defective. The government moves to dismiss or, in the alternative, for summary judgment. The Court has considered the government's motion and the opposition thereto.

## BACKGROUND

On November 29, 1993, a Florida State search warrant was executed by the Washington County (Florida) Sheriff's Department on 40 acres of timberland owned by Plaintiff near Chipley, Florida. During the search, several hundred marijuana plants, growing equipment, $9,780.00 in U.S. currency (the "U.S. Currency") secreted under a mobile home roof, and a 1987 Chevrolet Sprint (the "Sprint") were found and seized. The government claims that Plaintiff facilitated the seizure of the Sprint by providing the keys to it. On this same date, Plaintiff was arrested for his activities related to the cultivation of marijuana. While being transported to the Washington County jail, Plaintiff questioned DEA Special Agent Brian McLaurin regarding the status of the U.S. Currency and the Sprint (collectively, the "Seized Property") and was informed that both were being seized for federal forfeiture (Brian E. McLaurin Aff. ¶ 4).

On December 15, 1993, Plaintiff was indicted by a United States Grand Jury in Tallahassee, Florida on charges of manufacturing and distributing marijuana. An $150,000 secured bond was set with the condition that plaintiff be released into the custody of Linda Burger. Plaintiff never posted bail and remained continuously in federal custody.

On January 18, 1994, DEA mailed notices of its seizure and proposed forfeiture of the Sprint and the U.S. Currency by certified mail, return receipt requested, to Plaintiff's last known mailing address in Chipley, Florida (with respect to the U.S. Currency) and the address listed on the Sprint's registration in Bonifax, Florida (with respect to the Sprint). These notices informed Plaintiff that he would be permitted to file a claim and cost bond to contest the seizures. Plaintiff's friend, Linda Burger,[2] accepted delivery of

---

1. 21 U.S.C. § 881 is entitled *"Forfeitures"* and states in relevant part under subsection (a) **Subject property** that "The following shall be subject to forfeiture to the United States and no property right shall exist in them ... (4) All conveyances, including aircraft, vehicles, or vessels, which are used or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property ... [and] (6) All moneys, negotiable instruments, securities, or other things of value furnished or

intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter ..."

2. The government argues persuasively that Linda Burger should be treated as Plaintiff's agent-in-fact. She had signed notices for him on four separate occasions. Moreover, after Plaintiff's

the notice related to the Sprint on February 3, 1994, and her daughter, Dottie Burger, accepted delivery of the notice related to the U.S. Currency on February 1, 1994.

On January 31, 1994, DEA mailed notices of its seizure and the proposed forfeiture of the Sprint and the U.S. Currency by certified mail, return receipt requested, to Philip W. Scott, Bay County Jail, Panama City, Florida, Plaintiff's place of incarceration. This notice granted plaintiff an additional twenty (20) days from receipt to file a claim and cost bond, or an *In Forma Pauperis* affidavit, to contest the forfeiture. The notice of seizure with respect to the U.S. Currency was signed for by a Bay County Jail prison official on February 10, 1994. The notice of seizure with respect to the Sprint, however, was returned to DEA by the post office as "undeliverable," apparently because the state and zip code on the mailing address were partially obscured.

On February 9, 1994, pursuant to 21 C.F.R. § 1316.75, the notices of seizure and proposed forfeiture of both the seized U.S. currency and the Sprint were initially published in *USA TODAY*, a newspaper of general circulation in the Northern District of Florida. The notices were published for three consecutive weeks, on February 9, 16, and 23, 1994. Each notice stated that the last date to file a claim and cost bond or an affidavit of indigency with DEA to contest the seizure in federal court was March 1, 1994.

After the notice of seizure and intended forfeiture of the Sprint was returned to DEA by the post office as "undeliverable," DEA mailed a second set of notices on February 28, 1994, for both the U.S. Currency and the Sprint, to Plaintiff, who had been moved to the Escambia County Jail, Pensacola, Florida. Those notices granted Plaintiff an additional twenty days from receipt to file a claim and cost bond, or an affidavit of indigency. On March 1, 1994, however, Plaintiff was apparently moved back to the Bay County Jail from the Escambia County Jail. The notices sent to Escambia County Jail were returned to DEA with the envelope stamped

"RETURN TO SENDER ... MOVED, LEFT NO ADDRESS."

On February 7, 1994, Plaintiff filed a motion to suppress the evidence seized in the November 29, 1993 search. The evidence that Plaintiff sought to suppress included the U.S. Currency and the Sprint. On February 16, 1994, a hearing was held on Plaintiff's motion to suppress. The United States District Court for the Northern District of Florida denied Plaintiff's motion. Plaintiff appealed the district court's ruling to the U.S. Court of Appeals for the Eleventh Circuit, which affirmed the lower court's ruling on March 1, 1995. *United States v. Phillip Scott*, 49 F.3d 732 (11th Cir.1995). Plaintiff's petition for *certiorari* to the Supreme Court was denied on October 2, 1995. *Scott v. United States*, —— U.S. ——, 116 S.Ct. 115, 133 L.Ed.2d 66 (1995).

On February 16, 1994, Plaintiff pled guilty and was subsequently sentenced to 120 months incarceration in a federal correctional facility with an additional 96 months of supervised release. Following the plea, in a March 14, 1994, letter to Investigator Ricky Sewell of the Washington County Sheriff's Department, Plaintiff released claim to "any and all property seized resulting from a search warrant issued by Washington County Judge Allen Register on November 29, 1994."

On April 15, 1994, since DEA had not received either a claim and cost bond or *In Forma Pauperis* affidavit, and the time limit for having filed either the bond or the affidavit having passed, the government issued Declarations of Forfeiture for the Seized Property.

Almost a year later, on February 9, 1995, DEA received a letter from Plaintiff, who was then incarcerated at the federal correctional facility in Marianna, Florida, requesting information regarding the forfeitures of the Seized Property. In response, DEA sent Plaintiff a letter on February 28, 1995, enclosing a copy of the notices of seizure dated February 28, 1994, which had been sent to plaintiff at the Escambia County Jail. These

---

indictment on December 15, 1993, an $150,000 secured bond was set for his release with the

condition that Plaintiff be released into her custody.

notices granted Plaintiff an additional twenty days from receipt to file a claim ·and cost bond or an *In Forma Pauperis* affidavit, but DEA admits that the notices were confusing in this respect. Plaintiff states that he did not understand that the February 28, 1995 correspondence with the DEA presented a new opportunity to contest the forfeiture. In any event, Plaintiff did not seek clarification of the DEA's February 28, 1995 letter. Plaintiff has not corresponded further with the DEA regarding the Seized Property.

Plaintiff filed this lawsuit on April 2, 1996. He alleged that: (1) his Fifth Amendment due process rights were violated when the DEA failed to provide sufficient and timely notice of civil forfeiture proceedings related to the Seized Property and (2) the government failed to comply with 21 U.S.C. § 888, which provides for expedited procedures for seized conveyances. He amended his complaint on July 22, 1996 to assert further that his Fourth Amendment rights were violated because the search warrant pursuant to which his property was seized was defective. He asks for the return of the Seized Property and damages. The government challenges Plaintiff's standing to bring this action and has also responded substantively.

The Court finds for the government on both its procedural and substantive defenses to Plaintiff's claims. After discussing the standards for summary judgment, we will address standing and then deal with Plaintiff's claims.

## SUMMARY JUDGMENT STANDARDS

Under Federal Rule of Civil Procedure 56, summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

In *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court outlined the standards governing summary judgment:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Fed.R.Civ.P. 1.
>
> Rule 56 must be construed with due regard not only for the rights of the persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Id.* at 327, 106 S.Ct. at 2555 (citation omitted).

It is the function of the district court to determine whether any pertinent factual controversy actually exists. *Exxon Corp. v. Federal Trade Commission*, 663 F.2d 120 (D.C.Cir.1980). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in his favor. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C.Cir.1987) (per curiam). Mere allegations or denials of the adverse party's pleading are not enough to prevent the issuance of summary judgment. Fed.R.Civ.P. 56(e). In reviewing the record all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). The inferences must be reasonable, however, and the non-moving party can only defeat a motion for summary judgment by responding with some factual showing to create a genuine issue of material fact. *Harding v. Gray*, 9 F.3d 150, 154 (D.C.Cir.1993).

## ANALYSIS

### I. Standing

In its motion to dismiss, the government claims that Plaintiff is unable to establish standing to challenge the forfeiture of the Seized Property since he lacks a possessory interest in both the U.S. Currency and the Sprint. In his March 14, 1994 letter, Plaintiff had released his claim to "any inter-

est in any and all property seized resulting from a search warrant issued by Washington County Judge Allen Register on November 29, 1993." Plaintiff claims that since he did not know of the seizure of the U.S. Currency or the Sprint, the release did not apply to that property.

Plaintiff received constructive (if not actual) notice of the seizure and intended forfeiture of the Sprint and the U.S. Currency on several occasions prior to March 14, 1994, as described below. Indeed, Special Agent McLaurin had advised Plaintiff of the intended seizure of the Sprint and the U.S. Currency on the day of his arrest. Plaintiff was represented by counsel at the time that he signed the waiver letter. The language of the waiver letter is clear and unambiguous. The Court finds that Plaintiff is to be held to the full extent of his waiver in the letter of March 14, 1994.

■ A claimant seeking to contest a seizure and resulting forfeiture must establish standing as a threshold matter. *See United States v. $321,470 in U.S. Currency,* 874 F.2d 298, 304 (5th Cir.1989) (claimant alleging a possessory interest in forfeited property must show colorably lawful interest in the property). As a result of having signed a valid waiver letter on March 14, 1994, Plaintiff is unable to establish a possessory interest in the U.S. Currency or the Sprint, and thereby lacks standing in this case. This procedural defect is grounds for dismissal, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. Plaintiff's Fourth Amendment Claims Related to the Search Warrant

Plaintiff claims that his Fourth Amendment rights were violated because the affidavit supporting the search warrant executed on November 29, 1993 failed to establish a sufficient basis for the issuing magistrate's finding of probable cause. If Plaintiff were to prevail on that claim, all evidence seized pursuant to the defective search warrant would be suppressed and the DEA could no longer sustain the forfeiture of the Seized Property. The government claims that Plaintiff litigated this issue at the time of his

criminal case and that collateral estoppel applies with respect to this issue.

■ The doctrine of collateral estoppel precludes a party from relitigating an identical issue that was adjudicated on the merits in a prior proceeding. *SEC v. Gruenberg,* 989 F.2d 977, 978 (8th Cir.1993). "[T]he judgment in the prior proceeding precludes the relitigation of issues actually litigated and necessary to the outcome of the first action." *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979). Furthermore, "a prior criminal conviction may work an estoppel in favor of the government in a subsequent civil proceeding ... [provided the questions were] 'distinctly put in issue and directly determined' in the criminal prosecution." *Emich Motors Corp. v. General Motors Corp.,* 340 U.S. 558, 568–69, 71 S.Ct. 408, 413–14, 95 L.Ed. 534 (1951) (citations omitted).

■ As described above, Plaintiff moved to suppress the seizure of the Sprint and the U.S. Currency, as well as other property, in his criminal case prior to pleading guilty. In that motion, he challenged the adequacy of the search warrant on grounds that the government lacked probable cause and, thus, violated his Fourth Amendment rights. His motion was denied by the district court, the Court of Appeals for the Eleventh Circuit affirmed the district court's ruling and the Supreme Court denied Plaintiff's petition for *certiorari.*

After reviewing the allegations in Plaintiff's motion to suppress and the allegations in Plaintiff's amended civil complaint, this Court finds the issues are identical. Thus, Plaintiff's claims with respect to the alleged violation of his Fourth Amendment rights are barred by the doctrine of collateral estoppel. Plaintiff cannot again challenge the seizure of the Seized Property on Fourth Amendment grounds.

## III. Plaintiff's Fifth Amendment Due Process Claim

■ Plaintiff claims that the DEA failed to provide him with the amount and type of notice of its intended forfeiture of the Seized Property that is required by the Due Process

Clause of the Fifth Amendment: He claims that he never actually received any of the notices sent to him by the DEA with respect to either the Sprint or the U.S. Currency prior to February 28, 1995, and that notice did not make clear that the forfeiture proceedings had been reopened. The government refutes Plaintiff's claim and argues that Plaintiff received actual notice, written notice and published notice of the seizure and intended forfeiture of the Seized Property.

The Supreme Court has held that due process requires "notice reasonably calculated, under all the circumstances, to appraise interested parties of the pendency of the action." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *See also Berry v. District of Columbia*, 833 F.2d 1031, 1036 (D.C.Cir. 1987). When the government can reasonably ascertain the name and address of an interested party, it must send "[n]otice by mail or other means as certain to ensure actual notice." *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800, 103 S.Ct. 2706, 2712, 77 L.Ed.2d 180 (1983). Due process does not require, however, that the interested party actually receive notice. *United States v. 51 Pieces of Real Property*, 17 F.3d 1306, 1316 (10th Cir.1994). "So long as the government acted reasonably in selecting a means likely to inform [the] persons affected … then it has discharged its burden." *Id.*

When the government is aware that an interested party is incarcerated, due process requires the government to make an attempt to serve him with notice in prison. *U.S. v. Clark*, 84 F.3d 378 (10th Cir.1996). Sending certified mail notice to a prison address satisfies the due process requirements. That a prisoner may not have received the certified mail notice does not negate the constitutional adequacy of the government's attempt to accomplish actual notice. *Clark*, 84 F.3d at 381.

The notice of seizure and proposed forfeiture with respect to the U.S. Currency clearly satisfied the Due Process Clause. The DEA mailed its notice to Plaintiff at the Bay County jail, where Plaintiff was incarcerated, on January 31, 1994. A prison official signed for the notice. While Plaintiff claims to have never received the certified mail notice with respect to the U.S. Currency, any such failure does not negate the constitutional adequacy of DEA's attempt to accomplish actual notice, as *Clark* makes clear. It is also important to note that Plaintiff received actual notice of the intended seizure and forfeiture of the Seized Property from Special Agent Brian E. McLaurin on November 29, 1993, the day he was arrested.

The notice of seizure and proposed forfeiture with respect to the Sprint presents a somewhat different issue. The January 31, 1994 notice mailed to Plaintiff at the Bay County Jail was returned as "undeliverable," apparently because the state and zip code on the mailing address were partially obscured. DEA then mailed a second set of notices (for both the Sprint and the U.S. Currency) to Plaintiff at Escambia County Jail on February 28, 1994. Those notices were returned to DEA with the envelope stamped "RETURN TO SENDER … MOVED, LEFT NO ADDRESS." Apparently unbeknownst to DEA, Plaintiff had been moved back to Bay County Jail on March 1, 1994.

The government's difficulties in providing notice directly to Plaintiff with respect to the Sprint while in prison during early 1994 do not rise to the level of a violation of Plaintiff's Due Process Clause rights. The government appears to have acted in good faith and their notice was constitutionally adequate. First, notices sent to Plaintiff's home mailing address with respect to the Sprint were received and signed by Linda Burger, Plaintiff's friend. While Plaintiff disputes the contention that Linda Burger was his "agent," she had signed notices sent to Plaintiff on four separate occasions. Moreover, after Plaintiff's indictment on December 15, 1993, an $150,000 secured bond was set with the condition that Plaintiff be released into the custody of Linda Burger. Under those circumstances, it was reasonable for the government to conclude that Ms. Burger was Plaintiff's agent-in-fact.

The Court also agrees that the government cured any potential Due Process Clause defect once it was alleged by Plaintiff

that he had not received actual notice. When the DEA received a letter from Plaintiff on February 9, 1995 alleging that he had not received earlier notice of the forfeitures, the DEA reopened the forfeiture proceedings and sent Plaintiff another notice on February 28, 1995. This third set of notices sent to Plaintiff gave him additional time in which to contest the forfeitures administratively. Plaintiff claims to have been unaware that this latter correspondence gave him an additional opportunity to challenge the forfeiture. While the letter, a copy of the forfeiture letter from February 28, 1994, did not spell out clearly the procedures that Plaintiff should have taken to contest the forfeiture, Plaintiff ignored the letter and took no action.

For the reasons described above, Plaintiff's Due Process Clause claim is denied.

## IV. The Government's Alleged Failure to Comply with 21 U.S.C. § 888

### A. The Sixty–Day Notice Requirement

█ In his complaint, Plaintiff alleges that "the agents of the United States failed to comply with the notice of civil forfeiture proceedings" within the sixty day requirement of Title 21, U.S.C. § 888(c). Complaint at ¶ 2 in the Statement of Claim Section. The government points out that 21 U.S.C. § 888(c) relates to expedited procedures for seized conveyances. This section provides that the owner of seized conveyances (such as the Sprint) may petition for an expedited decision if "the owner has filed the requisite claim and cost bond in the manner provided in section 1608 of title 19." 21 U.S.C. § 888(a). If such claim and cost bond are filed, the government then has 60 days to file a complaint for forfeiture in the appropriate district court. 21 U.S.C. § 888(c).

In this case, since Plaintiff has neither filed a claim or cost bond nor requested an expedited procedure for his seized conveyance. The 60–day statutory time limit does not apply here.

### B. Providing Notice "at the Earliest Practical Opportunity After Seizure"

█ 21 U.S.C. § 888(b)[3] calls for the provision of written notice to the owner and other interested parties of the legal and factual basis of a seized conveyance "at the earliest practical opportunity after determining ownership."[4] District courts have held delays of twenty-one days and sixty-two days to have violated the "earliest practicable opportunity" notice requirement and have ordered returns of seized conveyances under such circumstances. *See, respectively, Brantz v. U.S.*, 724 F.Supp. 767 (S.D.Cal. 1989); *Dwyer v. U.S.*, 716 F.Supp. 1337 (S.D.Cal.1989). The government provided notice in this case after fifty days. 21 U.S.C. § 888(b) does not create a *per se* notice requirement, so it is incumbent upon courts to interpret the "earliest practicable opportunity" requirement in light of the facts of the specific case.

The facts here suggest that the government has acted reasonably. Plaintiff was aware of the government's preliminary intention to seize the Sprint, because he was so notified by Special Agent Brian E. McLaurin at the time of his arrest. More importantly, it would not have been reasonable for the government to act more expeditiously to seek forfeiture of the Sprint pursuant to 21 U.S.C. § 881(a)(4), because the government had to first determine whether, in fact, the Sprint was related to Plaintiff's drug trafficking activities. It was not unreasonable for the government to take fifty days to make such a determination.

3. 21 U.S.C. § 888(b) is entitled **"Written notice of procedures"** and states in relevant part that "At the earliest practicable opportunity after determining ownership of the seized conveyance, the head of the department or agency that seizes the conveyance shall furnish written notice to the owner ... of the legal and factual basis of the seizure."

4. The government takes the position in its papers that 21 U.S.C. § 888(b) does not come into play in this case because Plaintiff has failed to file a claim and cost bond. Plaintiff points out that a claimant cannot file a claim and cost bond until he receives seizure notice because the notice sets forth the amount that must be posted and the case number in the administrative agency's records. *See*, in particular, *Dwyer v. U.S.*, 716 F.Supp. 1337, 1340 (S.D.Cal.1989).

The Court finds that Plaintiff's claim that the government failed to comply with 21 U.S.C. § 888 lacks merit.

## CONCLUSION

The government's motion is granted for the reasons described above. An appropriate order is attached hereto.