55 F.3d 1311
 31 Fed.R.Serv.3d 832
 UNITED STATES of America, Plaintiff-Appellee,
v.
INDOOR CULTIVATION EQUIPMENT FROM HIGH TECH INDOOR GARDEN
SUPPLY, One 1986 Nissan Pick-up Truck VIN JN6ND11S6GW003022,
One 1986 Shoreland'r Trailer VIN 1MDBEET15GC269277, and One
1985 Starcraft Boat VIN STRP7061E585 with 140 Horsepower
Mercruiser Engine, Defendants,
Rayburn D. Pollard, Jr., Claimant-Appellant.
 No. 93-2817.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 9, 1995.
Decided May 26, 1995.
 
 1
 Estaban F. Sanchez (argued), Office of the U.S. Atty., Springfield, IL, for plaintiff-appellee.
 
 
 2
 Allen E. Shoenberger and Melissa Murphy-Petros, Law Student (argued), Loyola University School of Law, Chicago, IL, for appellant.
 
 
 3
 Before BAUER and COFFEY, Circuit Judges, and CRABB, District Judge.*
 
 
 4
 CRABB, District Judge.
 
 
 5
 Claimant-appellant Rayburn Pollard, Jr. appeals from the denial of his motion under Fed.R.Civ.P. 60(b) to set aside a default judgment entered against his indoor marijuana cultivation equipment, pick-up truck, powerboat and trailer in a forfeiture action brought by the United States pursuant to 21 U.S.C. Secs. 881(a)(2), (a)(4) and (a)(6). Pollard suffered the default by failing to answer the government's in rem complaint. For the reasons expressed below, we affirm in part and reverse in part, holding that the district court properly declined to vacate the judgment against Pollard's cultivation equipment, but should have vacated the judgment against his pick-up truck, powerboat and trailer because the late filing of the government's complaint rendered the judgment void against those conveyances.
 
 FACTUAL BACKGROUND
 
 6
 The facts are of record and undisputed. On October 26, 1989, after months of investigating the business operations of High Tech Indoor Garden Supply in Washington, Illinois, federal Drug Enforcement Administration agents arrested its owner, Rayburn Pollard, Jr., and seized the company's indoor cultivation equipment as well as Pollard's 1986 Nissan pick-up truck, Starcraft powerboat and Shoreland'r trailer. On January 8 and February 5, 1990, Pollard contested the forfeiture of his property by filing the appropriate claims and cost bonds.
 
 
 7
 On April 24, 1991, Pollard pleaded guilty to manufacturing marijuana in violation of 21 U.S.C. Sec. 841(a)(1). Approximately three months later, on July 30, 1991, the United States began a civil forfeiture proceeding against Pollard's seized property, filing a verified four-count in rem complaint in the United States District Court for the Central District of Illinois. In Count I, the government sought forfeiture of Pollard's indoor cultivation equipment on the grounds that it had been used to manufacture a controlled substance under 21 U.S.C. Sec. 881(a)(2) and constituted proceeds traceable to an exchange for a controlled substance under 21 U.S.C. Sec. 881(a)(6). In Count II, the government sought forfeiture of Pollard's pick-up truck under the theory that it represented the proceeds of drug transactions under 21 U.S.C. Sec. 881(a)(6) and also had been used to facilitate drug transactions under 21 U.S.C. Sec. 881(a)(4). In Counts III and IV, the government sought forfeiture of Pollard's powerboat and trailer solely under 21 U.S.C. Sec. 881(a)(6) on the ground that both were purchased with proceeds of drug transactions.
 
 
 8
 On August 21, 1991, Pollard filed a claim of ownership, and on September 3, 1991, through his privately retained attorney, moved unsuccessfully to dismiss the government's complaint. After the district court denied his motion on February 19, 1992, Pollard failed to file an answer within twenty days as required by Rule C(6) of the Supplemental Rules of Certain Admiralty and Maritime Claims, which govern the procedures for civil forfeiture actions. On March 26, 1992, the government moved for entry of default and mailed a copy of the motion to Pollard's attorney as well as to the lawyer who had represented Pollard in his underlying criminal case. On April 10, 1992, after no response to the motion had been filed, the district court entered a default order against Pollard's cultivation equipment, pick-up truck, powerboat and trailer. Five days later the government moved for entry of default judgment and again mailed a copy of its motion to each of Pollard's attorneys. No response was filed and on April 17, 1992, the district court entered default judgment in favor of the government.
 
 
 9
 Pollard contends he learned of the default judgment for the first time on September 20, 1992, while incarcerated, and immediately began educating himself about in rem forfeiture procedures. He filed a pro se motion to vacate the judgment on November 24, 1992, asserting several grounds for relief, including his attorney's failure to notify him of the pending default or to respond on his behalf. He also argued that the government's complaint was time-barred under the applicable forfeiture laws, thereby rendering the default judgment void. Rejecting each of the asserted grounds for Rule 60(b) relief, the district court denied Pollard's motion on May 26, 1993.
 
 OPINION
 
 10
 To prevail on a motion to vacate a default judgment under Rule 60(b), a party must show (1) good cause for the default; (2) quick action to correct the default; and (3) the existence of a meritorious defense to the original action. Jones v. Phipps, 39 F.3d 158, 162 (7th Cir.1994); United States v. Di Mucci, 879 F.2d 1488, 1495 (7th Cir.1989). We review a district court's denial of a Rule 60(b) motion for an abuse of discretion. Jones, 39 F.3d at 162. Under this standard, we will reverse the district court only if we conclude that no reasonable person could agree with its holding. Id.
 
 
 11
 A. Forfeiture of Pollard's Pick-up Truck, Powerboat, and
 
 Trailer
 
 12
 In November of 1988, Congress enacted a series of provisions substantially heightening the procedural requirements applicable to the forfeiture of conveyances seized by the government for drug-related offenses. See Anti-Drug Abuse Act of 1988, Pub.L. No. 100-690, 102 Stat. 4181, 4326 (codified at 21 U.S.C. Sec. 888). These provisions give owners of such conveyances several procedural rights not enjoyed by claimants in other federal forfeiture actions. The provision most relevant to this case is codified at 21 U.S.C. Sec. 888(c). It requires the government to file its complaint for forfeiture against any conveyance it seizes for a drug-related offense not later than 60 days after a claimant contests the seizure by filing a claim and cost bond. Section 888(c) provides:
 
 
 13
 Not later than 60 days after a claim and cost bond have been filed under section 1608 of Title 19 regarding a conveyance seized for a drug-related offense, the Attorney General shall file a complaint for forfeiture in the appropriate district court.... If the Attorney General does not file a complaint as specified in the preceding sentence, the court shall order the return of the conveyance to the owner and the forfeiture may not take place.[1]
 
 
 14
 Though Pollard presents numerous challenges to the district court's denial of his motion to vacate, his primary argument is based on Sec. 888(c) and is directed only at that part of the default judgment relating to his pick-up truck, powerboat and trailer. Pollard contends that because the government did not file its civil complaint seeking the forfeiture of his property until July 30, 1991, over eighteen months after he filed the appropriate claims and cost bonds, the only jurisdiction the district court retained over these three conveyances, according to Sec. 888(c), was to order their return to him and prevent any forfeiture of them from taking place. In other words, the government's failure to comply with the 60-day requirement of Sec. 888(c) divested the district court of jurisdiction to enter any judgment (including a default judgment) against his conveyances, despite his failure to answer the government's complaint. Accordingly, Pollard maintains that the default judgment against his conveyances is void and that the district court should have set it aside under Rule 60(b)(4).
 
 
 15
 In opposition, the government does not dispute that its forfeiture complaint against Pollard's property was filed much later than 60 days after Pollard filed his claims and cost bonds. Nor does the government contest that Pollard's pick-up truck, powerboat, and trailer are all "conveyances." See Random House Dictionary of the English Language 445 (2d ed. 1987) (defining "conveyance" as "a means of transporting, esp. a vehicle, as a bus, airplane, or automobile"). Instead, the government argues that Sec. 888(c) simply does not apply in this case because Pollard's pick-up truck, powerboat and trailer are not conveyances seized "for a drug-related offense" within the meaning of the statute. According to the government, Congress's use of the modifying phrase "for a drug-related offense" limits the applicability of Sec. 888(c) to the forfeiture of conveyances seized solely on the ground that they "facilitated" drug transactions under 21 U.S.C. Sec. 881(a)(4); Congress never intended for Sec. 888(c) to apply to the forfeiture of conveyances sought as "proceeds traceable" to such transactions under 21 U.S.C. Sec. 881(a)(6).[2] Thus, the government's argument runs, the expedited procedures of Sec. 888(c) are inapplicable here because the government sought forfeiture of Pollard's powerboat and trailer solely on the ground that they constituted "proceeds" under Sec. 881(a)(6), and sought forfeiture of Pollard's pick-up truck on the dual grounds that it both "facilitated" drug transactions under Sec. 881(a)(4) and constituted "proceeds" under Sec. 881(a)(6).
 
 
 16
 Addressing first the applicability of Sec. 888(c) to this case, we conclude that the government's narrow interpretation of the statute is flawed in several respects. To begin, the government's interpretation is inconsistent with the plain language of the statute. The unambiguous text of Sec. 888(c) does not suggest that its procedural requirements apply only to conveyances seized solely under Sec. 881(a)(4) and not to those seized under Sec. 881(a)(6). See United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (statutory interpretation begins with the language of the statute itself). Section 888(c) applies to the forfeiture of any "conveyance seized for a drug-related offense," and the term "drug-related offense" is defined broadly in the regulations as "any proscribed offense which involves the possession, distribution, manufacture, cultivation, sale, [or] transfer ... [of] any substance the possession of which is prohibited by Title 21, U.S.C." 21 C.F.R. Sec. 1316.91(d). Thus, the plain and ordinary meaning of Sec. 888(c) is that its provisions apply to the forfeiture of conveyances seized essentially "because of any drug offense" or "as a result of any drug offense" or "on account of any drug offense." See Webster's New International Dictionary 984 (2d ed. 1958). Each of these formulations is broad enough to encompass the forfeiture of conveyances seized as "proceeds" of drug transactions under Sec. 881(a)(6) as well as those seized for having "facilitated" drug transactions under Sec. 881(a)(4).
 
 
 17
 To accept the government's interpretation of the scope of Sec. 888(c) would require reading additional terms into the statute and reading "conveyance seized for a drug-related offense" to mean "conveyance seized for having facilitated a drug-related offense." Had Congress intended to restrict the reach of Sec. 888(c) in this manner it easily could have done so explicitly, such as by substituting "under Sec. 881(a)(4)" for the phrase "drug-related offense." It chose not to, however, and it is not for this court to rewrite the statute and drastically curtail its scope. By using the phrase "for a drug-related offense," Congress seems to have intended a broad application for the procedural protections of Sec. 888 rather than the narrow reach ascribed to the statute by the government.
 
 
 18
 Alternatively, we could accept the government's construction of Sec. 888(c) were we able to conclude that the term "conveyance" itself, as used in Sec. 888(c), does not mean a vehicle or vessel but rather a vehicle or vessel used to facilitate a drug transaction. Though not a theory advanced in this case, it is one that the government raised successfully in United States v. 1992 Team Warlock 28' World Twin Hull Speedboat, 875 F.Supp. 652 (D.Ariz.1994), the only reported case to address this precise question. There, the district court held that a complaint filed by the government against a speedboat seized as "proceeds" under Sec. 881(a)(6) was not barred by Sec. 888(c) even though it was filed more than 60 days after the claimant filed his claim and cost bond because "the expedited notice and filing procedures [of Sec. 888] apply only to 'conveyances' seized under 21 U.S.C. Sec. 881(a)(4)." Id. at 656. Relying on Sec. 881(a)(4), which is the only provision explicitly authorizing the forfeiture of conveyances, the district court reasoned that "conveyances" are only those vehicles used, or intended to be used, to facilitate a drug transaction. Id. at 655. According to the court, the fact that the speedboat also had the potential to be used as a conveyance was immaterial; section 888(c) was inapplicable because "[t]he government seized the speedboat as a proceed of an illegal drug transaction, not as a conveyance." Id. at 656.
 
 
 19
 In our view, however, the language of Sec. 881(a)(4) does not limit the ordinary definition of the term "conveyance." Section 881(a)(4) subjects to forfeiture "[a]ll conveyances, including aircraft, vehicles, or vessels, which are used to ... facilitate [drug transactions]." Congress's use of the pronoun "which" is significant; it introduces a nonrestrictive clause--"which are used to ... facilitate [drug transactions ]"--that does not limit the meaning of the word it modifies--"conveyance." Thus, the plain language of Sec. 881(a)(4) indicates that the definition of the term "conveyance" is not limited to a vehicle or vessel used or intended to be used to facilitate a drug transaction. In other words, there exists no reason to believe that a "conveyance" seized under Sec. 881(a)(6) as a "proceed" is any less a "conveyance" than one seized under Sec. 881(a)(4). The only distinction is that it is subject to forfeiture under a different statutory provision.
 
 
 20
 Second, the government's narrow interpretation of Sec. 888(c) contravenes that statute's evident purpose. Congress enacted the expedited provisions of Sec. 888 "to minimize the adverse impact on those entitled to legal or equitable relief occasioned by the prolonged detention of [their conveyances] ... following [their] seizure for a drug-related offense." 21 C.F.R. Sec. 1316.90. Because conveyances seized under the forfeiture law can remain tied up during the pendency of administrative and judicial forfeiture proceedings for months on end, innocent owners may be deprived of their principal mode of transportation for extended periods of time. See Brantz v. United States, 724 F.Supp. 767, 770-71 (S.D.Cal.1989) (Section 888 is "an attempt to prevent individuals from being deprived of their conveyances for an undue amount of time before the government has made any showing that it is entitled to the property under the forfeiture laws."); United States v. 1986 Ford Bronco, 782 F.Supp. 1543, 1546 (S.D.Fla.1992) (Congress enacted the expedited provisions of Sec. 888(c) because "vehicle owners ... routinely faced the problem of being deprived of their vehicles for long periods of time without having redress to the courts.") (quoting Dwyer v. United States, 716 F.Supp. 1337, 1339 (S.D.Cal.1989)). Furthermore, because of the long delays, the conveyances returned to innocent owners may be worth substantially less than when they were seized, their value having depreciated.
 
 
 21
 In light of this statutory purpose, it is unreasonable to distinguish between a conveyance seized because the government believes it facilitated a drug transaction and a conveyance seized because the government believes it was purchased with the proceeds of a drug transaction. Section 888 was intended to protect innocent owners of seized conveyances; it makes no difference to the innocent owner who needs his or her car back whether the government seized it under one theory or another. The government's interpretation of Sec. 888(c) implies that Congress was more concerned with protecting the innocent owners of conveyances seized under Sec. 881(a)(4) than innocent owners of conveyances seized under Sec. 881(a)(6). No evidence exists that it was. Quite clearly, the owners of conveyances seized under either theory face the same potential hardships. Therefore, as Pollard suggests, it defies common sense to believe that Congress intended to eliminate the problems with respect to one group of conveyances and not with respect to the other, subjecting one group to the same slow disposition that prevailed before Sec. 888 was enacted.
 
 
 22
 For these reasons, we conclude that the expedited provisions of Sec. 888(c) apply equally to conveyances seized under Sec. 881(a)(4) and Sec. 881(a)(6). The claimant's rights should not depend exclusively on how the government chooses to characterize the seizure.
 
 
 23
 Having answered this threshold question in Pollard's favor, we next address whether the government's lengthy delay warranted vacation of the default judgment entered against Pollard's pick-up truck, powerboat, and trailer on the grounds that it was void. Rule 60(b)(4) authorizes the court to set aside any final judgment that is "void." When presented with this question, the district court held that the government's lack of compliance with the statutory provisions of Sec. 888(c) did not strip the court of the jurisdiction or discretion to enter the default judgment; hence, the judgment was not void and Pollard was not entitled to relief under Rule 60(b)(4). We conclude that this decision was an abuse of discretion.
 
 
 24
 Under the typical formulation, a judgment is void for purposes of Rule 60(b)(4) "if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law." In re Edwards, 962 F.2d 641, 644 (7th Cir.1992) (quoting 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure Sec. 2862, at pp. 198-200 (1973)). Similarly, a judgment may be void for purposes of Rule 60(b)(4) if the court, although having jurisdiction over the parties and subject matter, entered a decree "not within the powers granted to it by the law." United States ex rel. Wilson v. Walker, 109 U.S. 258, 266, 3 S.Ct. 277, 282, 27 L.Ed. 927 (1883); see also United States v. Zima, 766 F.2d 1153, 1159 (7th Cir.1985) (void judgment exists where court renders a judgment "over matters beyond the scope of authority granted to it by its creators") (quoting Ben Sager Chemicals International, Inc. v. E. Targosz & Co., 560 F.2d 805, 812 (7th Cir.1977)); V.T.A., Inc. v. Airco, Inc., 597 F.2d 220, 224 (10th Cir.1979) (judgment is void under Rule 60(b)(4) if the rendering court was powerless to enter it). Although ordinarily a district judge has broad discretion in the application of Rule 60(b), Connecticut National Mortgage Co. v. Brandstatter, 897 F.2d 883, 884 (7th Cir.1990), this is not true with respect to motions brought under Rule 60(b)(4). Because void judgments are legal nullities, district courts have little leeway. Bally Export Corp. v. Balicar, Ltd., 804 F.2d 398, 400 (7th Cir.1986). If the underlying judgment is void, it is a per se abuse of discretion for a district court to deny a movant's motion to vacate the judgment under Rule 60(b)(4). Id.
 
 
 25
 In the instant case, because the district court had no authority to enter it, the default judgment against Pollard's pick-up truck, powerboat and trailer is void and should have been vacated by the district court. Pollard's reading of Sec. 888(c) is correct. The statute's mandate is clear: if the government fails to commence a forfeiture action against a conveyance seized for a drug-related offense within 60 days after the claimant files his claim and cost bond, the court "shall order the return of the conveyance to the owner and the forfeiture may not take place." The statute leaves no room for district court discretion. Once the 60-day period expires without any action by the government, the only authority the district court retains over the conveyance is to order its return and prevent any forfeiture from taking place. At that juncture, the district court lacks either the express or implied authority to enter a judgment against the conveyance. Every court that has interpreted Sec. 888(c) has reached the same conclusion, construing the 60-day filing requirement as a mandatory, non-discretionary precondition to suit. See 1986 Ford Bronco, 782 F.Supp. at 1546 (forfeiture complaint filed 150 days after claim and cost bond filed is time-barred and requires return of conveyance to owner); United States v. One White 1987 Tempest Sport Boat, 726 F.Supp. 7, 9-10 (D.Mass.1989) (same for complaint filed 63 days after claim and bond filed); see also Dwyer, 716 F.Supp. at 1340 (forfeiture action barred where seizure notice delivered after delay of 62 days, thereby preventing claimant from filing a claim and cost bond, because the government's action indirectly defeated the 60-day requirement of Sec. 888(c)).
 
 
 26
 We need not decide whether the 60-day requirement of Sec. 888(c) is technically a procedural requirement or is "jurisdictional in the strict sense of the term." Hallstrom v. Tillamook County, 493 U.S. 20, 31, 110 S.Ct. 304, 311, 107 L.Ed.2d 237 (1989) (holding that the 60-day notice requirement in the citizen suit provision of the Resource Conservation and Recovery Act of 1976 is a mandatory condition precedent to commencement of suit that may not be disregarded at the court's discretion). Suffice it to say, once the 60-day period for filing expired, the court had no authority to enter judgment of any kind against Pollard's conveyances. Consequently, the district court should have vacated the judgment under Rule 60(b)(4) and returned the conveyances to Pollard.
 
 
 27
 B. Forfeiture of Pollard's Indoor Marijuana Cultivation
 
 Equipment
 
 28
 The only remaining question is whether the district court abused its discretion by denying Pollard's Rule 60(b) motion to vacate the default judgment entered against his indoor cultivation equipment as well. Pollard makes two arguments to support his contention that the district court erred in this respect. We dispose of each quickly, however, because neither constitutes "good cause" for the default. First, Pollard argues that his attorney's representation of his interests during the forfeiture proceedings was so grossly negligent that it denied him his constitutional right to effective assistance of counsel, thereby entitling him to relief under Rule 60(b)(1) or (b)(6). Rule 60(b)(1) provides that a court may relieve a party from a final judgment on the basis of "mistake, inadvertence, surprise, or excusable neglect." Rule 60(b)(6) allows for relief "for any other reason justifying relief." Pollard acknowledges our recent holding in United States v. 7108 West Grand Ave., 15 F.3d 632, 635 (7th Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 2691, 129 L.Ed.2d 822 (1994), that the Sixth Amendment's guarantee of effective assistance of counsel does not extend to forfeiture proceedings because such proceedings are not "criminal prosecutions" and claimants are not "accused." Nevertheless, he contends that Department of Revenue v. Kurth Ranch, --- U.S. ----, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), casts doubt on the continuing viability of this proposition. In Kurth Ranch, however, the Supreme Court held that a state's drug tax imposed on individuals convicted of marijuana possession constituted a criminal punishment for the same conduct and therefore violated the double jeopardy clause of the Fifth Amendment; the case has no bearing on the question whether a civil forfeiture proceeding is "criminal" for purposes of the Sixth Amendment's guarantee of effective assistance of counsel.
 
 
 29
 Pollard does not appear to be contending that his attorney's alleged negligence, in and of itself, warrants relief from the default under Rule 60(b). In any event, it is an argument we would reject. See Dickerson v. Board of Education, 32 F.3d 1114, 1118 (7th Cir.1994) ("[C]ounsel's negligence, whether gross or otherwise, is never a ground for Rule 60(b) relief."). Under such circumstances, a litigant's appropriate remedy is a suit against his attorney for malpractice, not relief under Rule 60(b). See Johnson v. Gudmundsson, 35 F.3d 1104, 1117 (7th Cir.1994).
 
 
 30
 Second, Pollard argues that he never received personal notice of the default proceedings and therefore was denied due process of law. This argument is equally unpersuasive. Pollard concedes that his attorney received notice of the pending default, and as the district court noted, "notice to a party's attorney constitutes notice to that party." United States v. Di Mucci, 879 F.2d at 1495. Lack of communication between a party and his attorney, resulting in the late filing of a pleading, is not "good cause" under Rule 60(b). Pretzel & Stouffer v. Imperial Adjusters, 28 F.3d 42, 45 (7th Cir.1994) (citing C.K.S. Engineers, Inc. v. White Mountain Gypsum Co., 726 F.2d 1202, 1207 (7th Cir.1984)).
 
 ORDER
 
 31
 Accordingly, we AFFIRM the district court's denial of Pollard's Rule 60(b) motion to vacate the default judgment as it relates to his indoor marijuana cultivation equipment and REVERSE and REMAND the district court's decision as it relates to Pollard's pick-up truck, powerboat and trailer.
 
 
 
 *
 The Honorable Barbara B. Crabb, Chief Judge of the United States District Court for the Western District of Wisconsin, sitting by designation
 
 
 [1]
 Section 888(c) also provides that "the court may extend the [60-day] period for filing for good cause shown or on agreement of the parties." Neither of these exceptions is applicable in this case, however. The government neither moved in the district court for an extension of time nor secured Pollard's agreement for an extension
 
 
 [2]
 Section 881(a)(4) subjects to forfeiture "[a]ll conveyances, including aircraft, vehicles, or vessels, which are used to transport, or in any manner facilitate the transportation, sale, receipt, possession, or concealment of [controlled substances]." Section 881(a)(6) covers, among other things, "[a]ll moneys, negotiable instruments, securities, or other things of value furnished ... by any person in exchange for a controlled substance" and "all proceeds traceable to such an exchange."