

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-29-1995

# United States of America v. McGlory

Precedential or Non-Precedential:

Docket 94-3528

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"United States of America v. McGlory" (1995). *1995 Decisions*. Paper 325.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/325

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 94–3528

———————

UNITED STATES OF AMERICA

v.

$184,505.01 IN U.S. CURRENCY

Reginald D. McGlory,
          Claimant–Appellant

———————

No. 94–3674

———————

UNITED STATES OF AMERICA

v.

$14,548.50 IN U.S. CURRENCY

Reginald D. McGlory,
          Claimant–Appellant

———————

No. 94–3675

———————

UNITED STATES OF AMERICA

v.

ONE MARBLE INDIAN STATUE,
ONE REPLICA REMINGTON
RATTLESNAKE STATUE

Reginald D. McGlory,
          Claimant–Appellant

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

1

(D.C. Nos. 89-Civ-2323, 90-Civ-236, and 90-Civ-369)

Argued September 13, 1995

Before: SLOVITER, Chief Judge, ALITO, Circuit Judge, and RENDELL,
District Judge[0]


(Opinion Filed: December 29, 1995)

Michael A. Young (Argued)
165 Christopher Street
New York, New York  10014

    Attorney for Claimant-Appellant


Frederick W. Thieman, United States Attorney
Bonnie R. Schlueter, Assistant United States Attorney
Mary M. Houghton, Assistant United States Attorney (Argued)
633 U.S. Post Office and Courthouse
Pittsburgh, Pennsylvania  15219

    Attorneys for Appellee

OPINION OF THE COURT


ALITO, Circuit Judge:

In these appeals, Reginald D. McGlory challenges the district court's refusal to set aside default judgments in three separate civil in rem forfeiture proceedings brought under 21 U.S.C. § 881(a)(6).[0]  McGlory raises five separate issues -- lack

---

[0]The Honorable Marjorie O. Rendell, District Judge for the Eastern District of Pennsylvania, sitting by designation.
[0]The provision states in relevant part:

The following shall be subject to forfeiture to the United States and no property right shall exist in them:

of notice, double jeopardy, wrong standard in refusing to set aside default judgments, insufficient reasons for refusing to set aside default judgment, and misstatement or fraud on the part of the government.  Because we find that the government violated McGlory's due process rights by failing to provide him with adequate notice of two of the proceedings, we reverse the district court's judgments in those proceedingsi and remand those cases for further proceedings.  However, we reject McGlory's double jeopardy argument and therefore affirm the district court's judgment in the remaining proceeding.  We also reject McGlory's remaining arguments.

I.

On September 8, 1989, as part of a criminal investigation of McGlory, federal Drug Enforcement Administration ("DEA") and Internal Revenue Service ("IRS") agents executed a search warrant at 4265-67 Bryn Mawr Road in Pittsburgh.  Among other things, the agents seized the items that are the subject of the three

---

\* \* \*
(6) <u>All moneys</u>, negotiable instruments, securities, or other things of value <u>furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange</u>, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

21 U.S.C. § 881(a)(6) (emphases added).

3

proceedings on appeal: $14,584.50 in cash ("$14K")[0]; three statues[0]; and an apparently separate collection of $184,505.01 in cash ("$184K").[0]  The agents also arrested McGlory.  He was eventually convicted of conspiracy to distribute heroin and to possess heroin with the intent to distribute it, in violation of 21 U.S.C. § 846; possession of heroin with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C); possession of a firearm by a convicted felon, in violation of 18 U.S.C. §922(g)(1); using a firearm in a drug trafficking operation, in violation of 18 U.S.C. § 924(c)(1); and laundering drug proceeds, in violation of 18 U.S.C. § 1956(a)(1)(A)(i) and 18 U.S.C. § 2. See United States v. McGlory, 968 F.2d 309, 314-15 (3d Cir. 1992), cert. denied, 113 S. Ct. 1388 (1993).

The DEA began separate administrative forfeiture proceedings against the $14K and the statues.[0]  McGlory, who was incarcerated, received notice of both proceedings in prison, Supplemental Appendix ("Supp. App.")[0] at 60, 23, but filed no administrative claims in either proceeding.  Id.  Upon the filing of administrative claims by Sandra McGlory (McGlory's wife) and Ola Mae McGlory (his mother) to the $14K and the statues,

---

[0]United States v. $14,548.50 in U.S. Currency (No. 94-3674).
[0]United States v. One Marble Indian Statue, One Replica Remington Rattlesnake Statue (No. 94-3675).
[0]United States v. $184,505.01 in U.S. Currency (No. 94-3528).
[0]The DEA referred the forfeiture of the $184K to the United States Attorney for judicial forfeiture, because its value exceeded $100,000, the maximum allowable amount for the less cumbersome administrative forfeiture process.  App. 77.
[0]As used in this opinion, Appendix ("App.") and Supplemental Appendix ("Supp. App.") refer to the appendices submitted by McGlory and the government, respectively.

4

respectively, Supp. App. 52, 55, 60, 23, the DEA referred the forfeitures to the United States Attorney, who filed complaints for civil forfeiture on February 7, 1990 (for the $14K) and February 28, 1990 (for the statues).

The government served McGlory with the complaints via first class and certified mail at the Bryn Mawr Road address, where his mother signed both certified mail receipts. Supp. App. 43, 213–16, 4. In her affidavit, McGlory's mother claimed not to remember receiving the notices but stated that she would have turned any such notices over to the attorney who was representing McGlory on the criminal charges, Thomas Ceraso, Esq. Appendix ("App.") at 117. The government did not serve McGlory in prison, and made no attempt to do so.

McGlory did not file any claim or answer in either proceeding, App. 1–6, 27, 31, and the district court entered default judgments against him on May 29, 1990, and July 23, 1990, forfeiting the $14K and the statues, respectively. App. 21–22. McGlory filed motions to set aside the default judgments on April 21, 1994. App. 34. 43. After referring the matter to a magistrate judge, who recommended that the default judgments not be reopened, the district court denied McGlory's motions. App. 3, 9.

The government filed a complaint for civil forfeiture of the $184K on November 21, 1989. App. 7, 17. The government served the complaint on McGlory via first class and certified mail at the Bryn Mawr Road address, as well as on Mr. Ceraso. Supp. App. 19. When McGlory again failed to file any claim or answer, the

5

government obtained a default judgment.  Supp. App. 99, 111.  On McGlory's behalf, Mr. Ceraso then filed a claim of ownership and a motion to set aside the entry of default, which the government did not oppose, and the court set aside the judgment.  Supp. App. 102-10, 112.  McGlory again failed to file an answer within the time allotted by the court, and the court entered another default judgment against him on April 12, 1991.  Supp. App. 129; App. 23. On July 15, 1994, McGlory filed a motion to set aside this second default judgment, which the district court denied.

## II.

McGlory first argues that his due process rights were violated in that the government failed to provide him with adequate notice of the civil forfeiture proceedings against the $14K and the statues.  Relying primarily on the Supreme Court's decision in Robinson v. Hanrahan, 409 U.S. 38 (1972), McGlory argues that the Due Process Clause required that the government serve him with notice of the forfeiture proceedings in prison.[0]

By virtue of 28 U.S.C. § 2451, civil in rem forfeiture proceedings are governed by Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims.  As the government notes, Rule C(4) requires only publication, not personal service of

---

[0] McGlory also denies that he resided at the Bryn Mawr Road address prior to his arrest, claiming that the house at that address was his mother's home.  McGlory Br. at 6, 9-11.  The government points to extensive evidence that McGlory did in fact reside at 4265-67 Bryn Mawr Road.  Gov't Br. at 7 n.1.  Because we conclude that the government should have served (or at least attempted to serve) McGlory in prison, we need not resolve this dispute concerning McGlory's pre-arrest address.

process. However, for due process purposes, publication alone is not sufficient when the government can reasonably ascertain the names and addresses of interested parties. Mennonite Board of Missions v. Adams, 462 U.S. 791 (1983).

McGlory argues, in our view persuasively, that Robinson and Adams together required that the government at least make an attempt to serve him with notice of the forfeiture proceedings in prison. In most important respects, Robinson appears indistinguishable from the present case. In Robinson,

> the State knew that appellant was not at the
> address to which the notice was mailed and,
> moreover, knew also that appellant could not get
> to that address since he was at that very time
> confined in . . . jail. Under these
> circumstances, it cannot be said that the State
> made any effort to provide notice which was
> "reasonably calculated" to apprise appellant of
> the pendency of the forfeiture proceedings.

Robinson, 409 U.S. at 40 (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)); see also United States v. Woodall, 12 F.3d 791, 794 (8th Cir. 1993) (when government knows of party's actual whereabouts, due process requires sending of notice to that address, especially where party is incarcerated); accord United States v. Giraldo, 45 F.3d 509, 511 (1st Cir. 1995).

The government's counterarguments are unavailing. The government cites Rule C(4) to show that it had no statutory duty to inform McGlory, but this argument is not dispositive for due process purposes. Equally unpersuasive is the actual notice of the administrative forfeiture proceedings that McGlory received

7

while he was in prison, since the judicial forfeiture proceedings were separate proceedings from the administrative actions.

The government also claims that its actions satisfied the Mullane standard, and attempts to distinguish Robinson by noting that the defendant in Robinson did not receive notice of the proceeding until after it had concluded, whereas McGlory had actual notice of the proceedings from two sources: the notice of the administrative proceedings and the notice of the civil proceedings received by his attorney from McGlory's mother. As noted above, we do not find the notice of the administrative proceedings that McGlory received while in prison to be significant for purposes of the subsequent judicial proceedings. Furthermore, the government's arguments concerning the notice received by McGlory's attorney are flawed.[0]

The government, citing United States v. Indoor Cultivation Equipment, 55 F.3d 1311 (7th Cir. 1995), argues that the receipt of notice by McGlory's attorney constituted actual notice to McGlory. However, Indoor Cultivation Equipment and the case it cited, United States v. Di Mucci, 879 F.2d 1488, 1495 (7th Cir. 1989), involved situations where the litigation had already begun and the party's attorney had received notice of an important fact or deadline but had failed to act on it. The important Supreme

---

[0]The parties dispute whether there is sufficient evidence to support a finding that McGlory's attorney in the criminal case, Thomas Ceraso, Esq., received the notices of the civil forfeiture proceedings from McGlory's mother. There seems to be strong evidence that he did receive the notices, including Mrs. McGlory's affidavit, App. 123. For purposes of this analysis, we assume that Mr. Ceraso received actual notice of the proceedings.

8

Court cases in this area, <u>Link v. Wabash R. Co.</u>, 370 U.S. 626 (1962), and <u>Smith v. Ayer</u>, 101 U.S. 320 (1879), also involved such situations, as opposed to initial service of process on a defendant.

The situation presented here -- where the proceedings had not yet begun, McGlory was therefore not yet a party,[0] and Mr. Ceraso was not yet his attorney <u>in these proceedings</u> -- is easily distinguishable from that in <u>Indoor Cultivation</u> and the other cases cited above.  Plainly stated, for purposes of the civil forfeiture proceedings against the $14K and the statues, McGlory did not have an attorney at the time process was received by Mr. Ceraso; hence, service on Mr. Ceraso was not service on McGlory's attorney, and thus could not constitute actual notice to McGlory.[0]

III.

---

[0]Indeed, with regard to McGlory's double jeopardy argument, <u>see</u> Part IV <u>infra</u>, the government claims that McGlory was never a party to the first forfeiture proceeding.

[0]Cases construing Rule 4 of the Federal Rules of Civil Procedure highlight the distinctiveness of service of process. Rule 4(d)(3) permits service upon an individual "by delivery of a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4(d)(3).  When the agent is the individual's attorney, numerous courts have held that the validity of service of process upon the attorney depends upon actual authority on the part of the attorney to receive process on behalf of the individual. <u>See, e.g.,</u> <u>Schultz v. Schultz</u>, 436 F.2d 635, 639 (7th Cir. 1971) (service upon attorney was ineffective where attorney had not been appointed for that precise task); <u>Schwarz v. Thomas</u>, 222 F.2d 305 (D.C. Cir. 1955) (attorney representing defendant in another litigation has no authority to accept service of process in a separate suit); <u>Select Creations, Inc. v. Paliafito America, Inc.</u>, 830 F. Supp. 1223, 1234 (E.D. Wis. 1993) and cases cited.

McGlory next argues that the forfeitures in Nos. 94-3675 (statues) and 94-3528 ($184K) should be set aside as multiple punishments imposed on him for the same offense in violation of the Double Jeopardy Clause of the Fifth Amendment because they came after the forfeiture of the $14K in No. 94-3674 and (in the case of the $184K) after McGlory's criminal conviction.[0] According to McGlory, this result is compelled by the Supreme Court's decisions in United States v. Halper, 490 U.S. 435 (1989), Austin v. United States, 113 S. Ct. 2801 (1993), and Department of Revenue of Montana v. Kurth Ranch, 114 S. Ct. 1937 (1994).[0]

---

[0]The following chronology is relevant to this discussion:

    (1) No. 94-3674 ($14K)
        Complaint filed: February 7, 1990
        Jeopardy attached: Never (see Part III.B infra)
        Default judgment entered: May 30, 1990

    (2) No. 94-3675 (statues)
        Complaint filed: February 28, 1990
        Jeopardy attached: Never (see Part III.B infra)
        Default judgment entered: July 24, 1990

    (3) Criminal conviction
        Superseding indictment filed: December 13, 1989
        Jeopardy attached: April 25, 1990
        Judgment of conviction and sentence: February 12, 1991

    (4) No. 94-3528 ($184K)
        Complaint filed: November 21, 1989
        Jeopardy attached: No earlier than May 4, 1990, when
        McGlory was made a party (see footnote 14 infra).
        Default judgment entered: April 12, 1991

[0]McGlory did not raise his double jeopardy argument in the district court. Hence, the alleged constitutional violation is reviewable only for plain error. United States v. Olano, 113 S. Ct. 1770 (1993).

10

McGlory's double jeopardy argument fails on several grounds. First, because he never filed a claim in the proceeding against the $14K or the proceeding against the statues, he was never "in jeopardy" in those proceedings. Second, none of the forfeitures constituted "punishment" within the meaning of the Double Jeopardy Clause. Finally, none of the proceedings were based on the "same offense."

A.

The Double Jeopardy Clause of the Fifth Amendment provides that no person may "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This clause also applies to imprisonment and monetary penalties, Ex parte Lange, 85 U.S. (18 Wall.) 163 (1874), and it has been held to protect against "three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." Halper, 490 U.S. at 440.

In three decisions issued in the last seven years, the Supreme Court has held that, in certain circumstances, constitutional limitations that had previously been thought to apply only to criminal sanctions also serve to limit the imposition of civil sanctions. In United States v. Halper, 490 U.S. 435 (1989), the Court extended double jeopardy limitations to civil penalties that are not solely remedial in purpose, holding that "under the Double Jeopardy Clause a defendant who has already been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the

11

second sanction may not be fairly characterized as remedial, but only as a deterrent or retribution." Id. at 448-49. The defendant in Halper had previously been convicted for 65 counts of violating the criminal false claims statute, 18 U.S.C. § 287, by filing false Medicare claims totalling less than $600. He was then sued by the government under the civil False Claims Act, 31 U.S.C. §§ 3729-3731, which prescribed a $2,000 civil penalty per violation. Based on the record of the prior criminal prosecution, the district court granted summary judgment for the government on the issue of liability, but the court held that the imposition of the full civil penalties prescribed by the statute would violate the prohibition against double jeopardy. On direct appeal, the Supreme Court agreed that the statutory penalty as applied to Halper violated double jeopardy. The Court held that the civil penalty constituted punishment because in this "rare case" the civil penalty bore "no rational relationship to the goal of compensating the Government for its loss, but rather appear[ed] to qualify as 'punishment' in the plain sense of the word." 490 U.S. at 449. The Court remanded the case to the district court to determine the size of the civil sanction that the government could receive without crossing the line between remedy and punishment. Id. at 450.

In Austin v. United States, 113 S. Ct. 2801 (1993), the Court considered two other forfeiture provisions of the Controlled Substances Act, 21 U.S.C. §§ 881(a)(4) and 881(a)(7), which provide for the forfeiture of, respectively, conveyances and real property used or intended for use in illegal drug-

12

related activities. 21 U.S.C. §§ 881(a)(4), (a)(7). Drawing on "the historical understanding of forfeiture as punishment," Austin, 113 S.Ct. at 2810, on the language of §§ 881(a)(4) and (a)(7), and on the legislative history of § 881, the Court found that forfeiture under §§ 881(a)(4) and (a)(7) does not solely serve a remedial purpose and hence must be considered "punishment" under Halper. As such, the Court concluded, forfeitures under §§ 881(a)(4) and (a)(7) are subject to the limitations of the Eighth Amendment's Excessive Fines Clause. Id. at 2812.

In so holding, the Austin Court rejected two arguments offered by the government in an attempt to show that §§ 881(a)(4) and (a)(7) are remedial and not punitive. First, the Court rejected the government's characterization of the conveyances and real property covered by the two sections as "instruments" of the drug trade, forfeiture of which could be considered remedial. See United States v. One Assortment of 89 Firearms, 465 U.S. 354, 364 (1984). Second, the Court rejected the government's attempt to liken such forfeitures to those involved in customs violations, which serve as "a reasonable form of liquidated damages," One Lot Emerald Cut Stones v. United States, 409 U.S. 232, 237 (1972), that compensate for the costs imposed by illegal drug activity on the government and on society as a whole. "[T]he dramatic variations in the value of conveyances and real property forfeitable under §§ 881(a)(4) and (a)(7)," the Court concluded, "undercut any similar argument with respect to those provisions." Austin v. U.S., 409 U.S. at 2812.

13

Most recently, in Department of Revenue of Montana v. Kurth Ranch, 114 S. Ct. 1937 (1994), the Court held that the imposition of a tax under Montana's Dangerous Drug Tax Act after the taxpayer had already been punished in a separate criminal proceeding represented a second "punishment" for the same offense in violation of the Double Jeopardy Clause. While noting the holding of Halper that the Double Jeopardy Clause prevents a defendant already punished in a criminal proceeding from having a nonremedial civil sanction imposed against him in a separate proceeding, the Court found the Halper method of determining whether a civil sanction is punitive to be inapplicable to tax statutes. Id. at 1944-45. Instead, focusing on a number of specific characteristics of the tax -- its high rate, its deterrent purpose, the fact that it is conditioned on the commission of a crime, the limitation of its scope to taxpayers who have already been arrested for the very conduct that gives rise to the tax obligation, and the fact that it is levied on goods that the taxpayer no longer owns or possesses -- the Court concluded that the tax is fairly characterized as punishment. Id. at 1946-48.

Resolution of McGlory's double jeopardy claim regarding the civil forfeitures requires answers to three distinct questions: Was McGlory "in jeopardy" in the first forfeiture proceeding? Did the forfeitures under § 881(a)(6) constitute "punishment"? And finally, did the offenses underlying the first forfeiture and

14

McGlory's criminal conviction represent the "same offense" as those underlying either of the two later forfeitures?[0]

B.

As noted in Part I <u>supra</u>, McGlory did not file any claim of ownership or answer to the complaint of forfeiture in either of the first two civil forfeiture proceedings. He did not participate in either proceeding until default judgments had already been entered against him. His first appearance in either proceedings was the filing of a motion to set aside the default judgment, in each case some four years after the judgment had been entered.

A forfeiture proceeding in which a party does not participate does not place that party in jeopardy, and therefore that party cannot use that forfeiture as the basis of a double jeopardy challenge to a subsequent proceeding. As the Seventh Circuit stated in <u>United States v. Torres</u>, 28 F.3d 1463, (7th Cir.) (holding that a forfeiture under 21 U.S.C. § 881(a)(6) in

---

[0]Another issue presented by any double jeopardy claim is whether the proceedings in which punishment has allegedly been imposed were separate proceedings or, alternatively, constituted a single, coordinated proceeding; if the latter is true, the double jeopardy argument fails. <u>See, e.g.</u>, <u>Kurth Ranch</u>, 114 S. Ct. at 1945 ("Montana could no doubt collect its tax . . . if it had assessed the tax in the same proceeding that resulted in [the taxpayer's] conviction."); <u>Missouri v. Hunter</u>, 459 U.S. 359, 368–69 (1983) ("Where . . . a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct . . . the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial."). We assume without deciding that the various forfeiture proceedings and McGlory's criminal trial were all separate proceedings.

15

which the claimant did not file a claim did not place the claimant in jeopardy for Fifth Amendment purposes), cert. denied, 115 S. Ct. 669 (1994): "You can't have double jeopardy without a former jeopardy."  Id. at 1465 (citing Serfass v. United States, 420 U.S. 377, 389 (1975)); see also United States v. Penny, 60 F.3d 1257 (7th Cir. 1995), petition for cert. filed, 64 U.S.L.W. ____ (U.S. Oct. 24, 1995) (No. 95-6698).

In United States v. Arreola-Ramos, 60 F.3d 188 (5th Cir. 1995), the Fifth Circuit followed the reasoning of Torres in rejecting the double jeopardy claim of a defendant who had not participated in an earlier administrative forfeiture proceeding. "As Arreola did not appear and contest the forfeiture, he was never in jeopardy," the court reasoned.  "Without former jeopardy, double jeopardy cannot arise."  Id. at 192.  Because of the factual similarity between Arreola-Ramos and the present case, the Fifth Circuit's description and dismissal of the defendant's legal theory bear quoting:

> [W]e perceive that Arreola's argument runs something like this: (1) the government arrested me and seized my money; (2) knowing I was in jail, the government instituted forfeiture proceedings against my money, but sent notice only to my civil residence; and (3) this constitutes inadequate notice and violates my due process rights, as I was unaware of and unable to contest the forfeiture.  Arreola then jumbles all three parts together and, in a transparent bit of legal alchemy, attempts to transmute the "lead" of a civil forfeiture proceeding--in which he was not even a party--into the "gold" of former jeopardy. Essentially, Arreola . . . now asks us . . . to overlook his absence from the forfeiture proceeding and to hold--not merely "in spite of" his absence but indeed "because of" his absence-- that former jeopardy attached in the forfeiture

16

> proceeding. Despite its ingenuity, this is
> nothing more than a garden variety flawed
> syllogism.

Arreola-Ramos, 60 F.3d at 190.

In United States v. Baird, 63 F.3d 1213 (3d Cir. 1995), petition for cert. filed, 64 U.S.L.W. 3318 (U.S. Oct. 17, 1995) (No. 95-630), we also adopted the Torres rationale in rejecting the double jeopardy argument of a defendant who had not filed a claim in an earlier administrative forfeiture proceeding. In that case, defendant Baird sought dismissal of a superseding criminal indictment, arguing that it was barred by the Double Jeopardy Clause in light of the earlier forfeiture. We found Baird's argument wanting, stating: "Like the double jeopardy claimant in Torres, as a non-party to the administrative forfeiture process, Baird was not, and could not have been, placed at risk by that process." Id. at 1219. While Halper "extended the no-double-punishments rule to civil penalties . . . [it] did not remove from the double jeopardy claimant's shoulders the burden of establishing a former jeopardy." Id.

The logic of Baird applies as well to judicial forfeiture proceedings such as that brought against the $14K and the statues. Thus, we hold that McGlory was not "in jeopardy" in either of the first two forfeiture proceedings.[0]

---

[0]McGlory's only argument here would have to be that he did in fact participate in the first forfeiture proceeding by filing his motion to set aside the default judgment. However, we have stated that "jeopardy does not, and cannot, attach until one is made a party to a proceeding before a trier of fact having jurisdiction to try the question of guilt or innocence, and that, until such time, the constitutional double jeopardy prohibition can have no application." Baird, 63 F.3d at 1218 (emphasis in

17

C.

In order to establish that his double jeopardy rights were violated, McGlory must also show that the forfeitures themselves constituted "punishment" under Halper, Austin, and Kurth Ranch. Two courts of appeals have addressed this issue with respect to §881(a)(6), reaching opposite conclusions. Adopting the Fifth Circuit's reasoning and rejecting the Ninth Circuit's, we hold that the forfeitures here did not constitute "punishment."

In United States v. Tilley, 18 F.3d 295 (5th Cir.), cert. denied, 115 S. Ct. 574 (1994), the Fifth Circuit held that forfeiture of illegal drug proceeds under § 881(a)(6) is not "punishment." Applying the test of Halper -- whether the amount forfeited was so great that it bore "no rational relation to the costs incurred by government and society from the defendant's criminal conduct," id. at 298-99, and citing national statistics on revenues produced and costs imposed by illegal drug activities, the court held that the amounts confiscated in that case were not grossly disproportionate to governmental and

---

original). Under this definition, McGlory's double jeopardy claim fails, since until and unless the default judgment was set aside, McGlory was not "a party to a proceeding before a trier of fact having jurisdiction to try the question of guilt or innocence." Alternative definitions offered by other courts of appeals are also of no help to McGlory in this regard. See Torres, 28 F.3d at 1465 (jeopardy attaches when evidence is first presented to trier of fact); United States v. Ursery, 59 F.3d 568, 572 (6th Cir. 1995) (in nontrial proceeding ended by a consent judgment, jeopardy attaches when judge accepts stipulation of forfeiture and enters judgment of forfeiture), cert. granted, 116 S.Ct. 762 (1196). United States v. Kearns, 61 F.3d 1422, 1428 (9th Cir. 1995) (jeopardy attaches no earlier than date on which defendant files answer to forfeiture complaint).

societal costs. Id. at 299. The court distinguished Austin, reasoning that the concerns about forfeitures of conveyances and real estate under §§ 881(a)(4) and (a)(7), i.e., that they could be wildly disproportionate to the costs imposed by the defendant's illegal activities, were not applicable to forfeitures of proceeds under § 881(a)(6). "[T]he forfeiture of drug proceeds will always be directly proportional to the amount of drugs sold. The more drugs sold, the more proceeds that will be forfeited. As we have held, these proceeds are roughly proportional to the harm inflicted upon government and society by the drug sale." Id. at 300.

Alternatively, the court held, even without the "rational relation" test of Halper, forfeiture of illegal drug proceeds is not "punishment" because of their very nature as illegally derived property. "When . . . the property taken by the government was not derived from lawful activities, the forfeiting party loses nothing to which the law ever entitled him. . . . The possessor of proceeds from illegal drug sales never invested honest labor or other lawfully derived property to obtain the subsequently forfeited proceeds. Consequently, he has no reasonable expectation that the law will protect, condone, or even allow, his continued possession of such proceeds because they have their very genesis in illegal activity." Tilley, 18 F.3d at 300.

We find the Fifth Circuit's reasoning to be sound. We therefore hold that the forfeiture under 21 U.S.C. § 811(a)(6) of proceeds from illegal drug transactions, or proceeds traceable to

19

such transactions, does not constitute "punishment" within the meaning of the Double Jeopardy Clause.

In so holding, we reject the contrary reasoning and conclusion of the Ninth Circuit regarding § 881(a)(6) in United States v. $405,089.23 U.S. Currency, 33 F.3d 1210 (9th Cir. 1994), amended on denial of rehearing, 56 F.3d 41 (9th Cir. 1995), cert. granted, 116 S.Ct. 762(1996). Eschewing the case-by-case approach urged by the government (and adopted by the Fifth Circuit in Tilley), the Ninth Circuit looked to "the entire scope of the statute which the government seeks to employ, rather than to the characteristics of the specific property the government seeks to forfeit." Id. at 1220; see also id. (citing Austin and Kurth Ranch as compelling a "categorical approach" under which a court "must look to the requirements of the forfeiture statute as a whole"). It noted that the scope of §881(a)(6) was not limited to proceeds, but included all moneys "'furnished or intended to be furnished'" in exchange for drugs, and all moneys "'used or intended to be used'" to facilitate violations of the drug statute. Id. at 1221 (emphases in opinion). The panel's reasoning was sharply criticized in a seven-judge opinion dissenting from the court's denial of rehearing and of rehearing en banc:

> The panel's opinion collapses Halper [a double jeopardy case] into Austin [an excessive fines case], converting Halper's rule of reason for the "rare" case into a per se rule for the routine case. It also merges the inquiry for excessive fines cases--whether the amount forfeited is partly punishment--into double jeopardy cases, where the issue is whether the amount forfeited is entirely punishment. And, perhaps most

20

critically, the opinion treats <u>proceeds</u>, which are forfeitable under § 881(a)(6), like a car or a house used to facilitate a drug offense. This has to be wrong. <u>89 Firearms</u>--which <u>Austin</u> distinguishes but leaves intact--says otherwise; and so does the Fifth Circuit . . . .

<u>$405,089.23 U.S. Currency</u>, 56 F.3d at 42-43 (Rymer, J., dissenting).

D.

Moreover, both of McGlory's double jeopardy claims must also fail for an additional reason: the challenged forfeitures were not predicated on the "same offense" as that which formed the grounds for the earlier forfeiture or his criminal conviction.[◊]

The basic test for determining whether two offenses are the "same offense" for double jeopardy purposes is the "same elements" test set forth in <u>Blockburger v. United States</u>, 284 U.S. 299, 304 (1932): "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether

---

[◊]Since <u>Halper</u> was decided in 1989, no court of appeals has dealt squarely with the "same offense" issue in connection with §881(a)(6). Several courts of appeals have addressed the issue tangentially, or with respect to a different provision of § 881. <u>See</u> <u>United States v. Ursery</u>, 59 F.3d 568 (6th Cir. 1995) (analyzing § 881(a)(7)), <u>cert. granted</u>, 116 S.Ct. 762 (1996); <u>United States v. $405,089.23 U.S. Currency</u>, 33 F.3d 1211 (9th Cir. 1994), (distinguishing case at bar from <u>Missouri v Hunter</u>, 459 U.S. 359(1983)); <u>amended on denial of rehearing</u>, 56 F.3d 41 (9th Cir. 1995), <u>cert. granted</u>, 116 S.Ct. 762 (1996) <u>United States v. One 1978 Piper Cherokee Aircraft, Tail No. N 5538V, Including Its Tools and Appurtenances</u>, 37 F.3d 489 (9th Cir. 1994) (remanding for consideration of "same offense" issue under § 881(a)(4)). <u>But see</u> <u>United States v. Sherrett</u>, 877 F. Supp. 519, 527 (D. Or. 1995) (holding that indictment and forfeiture under § 881(a)(6) were based on same offense where indictment included conspiracy count and forfeiture complaint included "allegations of conspiracy").

21

there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."[0]  The Blockburger "same elements" test was confirmed in United States v. Dixon, 113 S. Ct. 2849 (1993), which rejected the alternative "same conduct" test in overruling Grady v. Corbin, 495 U.S. 508 (1990).

Here, all three forfeiture complaints sought forfeiture "pursuant to 21 U.S.C. § 881."  App. 11, 14, 17.  The government supported its complaint against the 14K and the 184K with allegations that they were "proceeds from sales or exchanges of controlled substances, in violation of Title 21, United States Code."  App. 12, 18.  This language implicitly invoked §881(a)(6).  Regarding the statues, the government alleged that they were "acquired with proceeds traceable to unlawful exchanges of controlled substances in violation of 21 U.S.C. § 881(a)(6)."

---

[0]The Supreme Court clarified the applicability of the Blockburger test in Missouri v. Hunter, 459 U.S. 359 (1983), where the Court characterized the test as a rule of statutory construction that bars cumulative punishments for the same offense "'in the absence of a clear indication of contrary legislative intent.'" Blockburger, 459 U.S. at 366 (quoting Whalen v. United States, 445 U.S. 684, 692 (1980)) (emphasis in Blockburger).  Thus,

> [w]here . . . a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct under Blockburger, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.

Id. at 368–69.  The Hunter limitation on the scope of Blockburger would apply in the present appeal only if the civil and criminal proceedings were considered a single, coordinated proceeding rather than separate proceedings.  See Part III.B supra.

22

App. 15.[0]  Our analysis thus must begin with the language of §881(a)(6):

> The following shall be subject to forfeiture to the United States and no property right shall exist in them:
> * * *
>
> (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

21 U.S.C. § 881(a)(6).  Thus, proceeds from, or proceeds traceable to, exchanges of controlled substances in violation of "this subchapter" are subject to forfeiture.  "This subchapter" is subchapter I of Title 21, covering 21 U.S.C. §§ 801-904.  In addition, section 965 makes the forfeiture provision applicable to violations of subchapter II, 21 U.S.C. §§ 951-971.  21 U.S.C. § 965; see also United States v. Sherrett, 877 F. Supp. 519, 525-

---

[0]This level of specificity in the forfeiture complaints eliminates the need to undertake a detailed examination of indictments, affidavits, etc. of the sort conducted by the court in United States v. Ailemen, 893 F. Supp. 888 (N.D. Cal. 1995). There the court was faced with vague seizure notices that simply noted that the defendant's money was seized "for forfeiture under Title 21, United States Code (U.S.C.), Section 881, because it was used [in] or acquired as a result of a **drug related offense**," id. at 905 (emphasis in original), and had to determine whether the forfeitures were based on the same offenses as those charged in the criminal indictments, all of which were drug-related.

26 (D. Or. 1995). Therefore, forfeiture under section 881(a)(6) can punish a property owner only for violations of 21 U.S.C. §§801-971.

A Blockburger/Dixon analysis of the three forfeitures is straightforward: each forfeiture requires proof of an element that the others do not require, i.e., that the particular piece of property seized constituted illegal proceeds or was acquired with illegal proceeds. McGlory's assertions notwithstanding, the three forfeitures among themselves do not satisfy the "same elements" test.

We must also apply the Blockburger/Dixon test to the offenses underlying the third forfeiture (the $184K) and those underlying McGlory's criminal punishment, since this last forfeiture followed the criminal conviction. Of the criminal charges for which McGlory was indicted and convicted, only two fall within the range of violations covered by section 881(a)(6): conspiracy to possess with intent to distribute, and to distribute, heroin, in violation of 21 U.S.C. § 846; and possession of heroin with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C). See United States v. McGlory, 968 F.2d 309, 314-15 (3d Cir. 1992), cert. denied, 113 S. Ct. 1388 (1993). As noted above, the forfeitures were based on the allegations that the seized property was "proceeds from sales or exchanges of controlled substances" or "acquired with proceeds traceable to unlawful exchanges of controlled substances."

Under the Blockburger/Dixon test, the violations underlying the forfeitures and those for which McGlory was convicted also do

24

not constitute the "same offenses."  Conviction on the criminal charges required proof that McGlory participated in a conspiracy or that he possessed a controlled substance (namely, heroin); forfeiture under § 881(a)(6) did not require proof of either of these elements.  Similarly, forfeiture required proof of a sale or exchange, and proof that the specific property was proceeds of, or traceable to, a sale or exchange; neither of the criminal charges required proof of either of these elements.[0]

IV.

For the reasons stated above, we reverse the orders of the district court and remand for further proceedings not

---

[0] Halper and Kurth Ranch provide a useful contrast to the present case.  The criminal and civil charges against Halper were both based on his submission of the 65 false Medicare claims. The criminal false claims statute, 18 U.S.C. § 287, prohibited "mak[ing] or present[ing] . . . any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious or fraudulent."  The civil False Claims Act, 31 U.S.C. § 3729, prohibited "knowingly mak[ing], us[ing], or caus[ing] to be made or used, a false record or statement to get a false or fraudulent claim paid or approved." See Halper, 490 U.S. at 437-38.

The statute at issue in Kurth Ranch imposed a tax on the possession and storage of dangerous drugs.  See Kurth Ranch, 114 S. Ct. at 1941.  Thus, it was "conditioned on the commission of a crime."  Id. at 1947.  Moreover, the Court explained: "In this case, the tax assessment not only hinges on the commission of a crime, it is also exacted only after the taxpayer has been arrested for the precise conduct that gives rise to the tax obligation in the first place."  Id.  Thus, while neither Halper nor Kurth Ranch explicitly addressed the "same offense" issue, it seems clear that in both cases application of the Blockburger/Dixon test would have shown that both punishments were based on the same offense.

inconsistent with this opinion in Nos. 94-3674 and 94-3675, and affirm the order of the district court in No. 94-3528.[0]

---

[0]Judge Sloviter concurs with all of this opinion except for section III.D. Neither party has briefed the "same offense" issue, and the district court, which did not discuss the double jeopardy issue at all, obviously never addressed this particular issue. Under these circumstances I would leave that issue for another day.